JEEP CORPORATION AND AMERICAN MOTORS CORPORATION, PETITIONERS, v. SECOND JUDICIAL DISTRICT COURT OF THE STATE OF NEVADA IN AND FOR THE COUNTY OF WASHOE AND THE HONORABLE MICHAEL E. FONDI, DISTRICT JUDGE, RESPONDENTS.

No. 14001

October 29, 1982                    652 P.2d 1183

*Erickson, Thorpe, Swainston & Cobb,* and *Lionel, Sawyer & Collins,* Reno, for Petitioners.

*Peter C. Neumann,* and *Bradley & Drendel,* Reno, for Respondents.

**OPINION**

By the Court, STEFFEN, J.:

Petitioners, Jeep Corporation and American Motors Corporation (defendants below), seek prohibition or in the alternative, mandamus to vacate and expunge the entry of judgment filed by the respondent, The Honorable Michael E. Fondi, District Judge of the respondent Second Judicial District Court in a products liability action. The judgment was filed after a stipulation of dismissal had been filed by the parties pursuant to NRCP 41(a)(1)(ii). We conclude that petitioners are entitled to the relief sought.

The bench trial occurred in January, 1981, and remained under submission until the parties filed a stipulation of dismissal at 8:40 a.m. on April 20, 1982. On the same date, at 10:20 a.m., respondents filed findings of fact, conclusions of law and judgment in the same action. The caption of the action below referred to plaintiff William Charles Buckholt (Buckholt) by his guardian, Patricia A. Buckholt (Patricia). Patricia, as Buckholt's wife, was also a named plaintiff.

Buckholt sustained grave injuries while riding as a passenger in a 1976 Jeep CJ-5 vehicle manufactured by petitioners. Patricia was appointed guardian by a Wyoming court but the guardianship was terminated over a year prior to the trial.

Notwithstanding the serious head injuries suffered by Buckholt,[1] in a deposition taken in February, 1980, Patricia indicated that Buckholt could understand and handle his own business affairs. In any event, it is clear that the trial proceeded with all parties and the respondent district judge being aware of the fact that Buckholt was participating at trial without appointment of a guardian. It is equally clear that at no time during trial was an issue raised as to Buckholt's competence. The latter question first arose only after the filing of the stipulation of dismissal. The respondent district judge has, by affidavit filed in this Court, opined that Buckholt is "incompetent within the meaning of NRCP Rule 17(c)."[2] Judge Fondi further indicated that if, during trial, he had perceived any inadequacy in trial counsel's representation of Buckholt, he would have appointed a guardian ad litem or issued some other form of order protecting Buckholt's interests.

Through a series of telephone calls commencing April 13, 1982 and continuing through the evening of April 19, 1982, counsel for the parties were made aware of the amount of the judgment Judge Fondi intended to enter in favor of the plaintiffs, and the respondent district judge was made aware that the parties had settled the case and did not want the respondents to file findings of fact, conclusions of law and judgment. During these telephone conversations, Judge Fondi learned that Buckholt's counsel had agreed to a package settlement with petitioners' counsel which disposed of three cases arising from the same incident, the subject action included. The fact of the package settlement, coupled with an unawareness of the terms of settlement in the Buckholt case, caused Judge Fondi to question whether Buckholt's interests were now being adequately protected. As a result, the respondent district judge refused to approve or acknowledge the settlement and proceeded to accomplish the filing of the judgment almost two hours after the parties, by signatures of their respective counsel, filed the stipulation of dismissal.

The threshold issue before us is whether extraordinary relief is appropriate under the present posture of this case. Respondents suggest that petitioners have failed to show that they do

[1]The findings of fact filed by respondents indicate Buckholt sustained multiple skull fractures and massive permanent damage to his brain, right foot and ankle.

[2]Since many of the events relevant to this proceeding occurred subsequent to the trial of the underlying action, we have elected to consider the uncontroverted facts supplied by affidavits and other documents submitted by the parties in connection with this proceeding.

not have a plain, speedy and adequate remedy in the ordinary course of law. NRS 34.170, 34.330. It is argued that an existing district court order enjoining the further dissemination of respondents' filings, coupled with avenues of potential relief through motion or by appeal, all militate against the availability of the relief sought. It is true that neither mandamus or prohibition is appropriate in the face of effective alternative remedies. Heilig v. Christensen, 91 Nev. 120, 532 P.2d 267 (1975). However, each case must be individually examined, and where circumstances reveal urgency or strong necessity, extraordinary relief may be granted. Shelton v. District Court, 64 Nev. 487, 185 P.2d 320 (1947).

Petitioners have demonstrated to our satisfaction that they are entitled to the relief sought. Until such time as respondents' judgment and related documents are declared void, they retain at least a colorable validity which poses a threat of continuing mischief to petitioners. Copies of the judgment have already been circulated, and insofar as the record reveals, the judgment bears all the earmarks of a final adjudication on the merits. A substantial part of petitioners' inducement to settle the action has been and continues to be syphoned away by the respondents' filings in the case. The spectre of further publicity resulting from respondents' judgment is also real and pressing. It does not evaporate by reason of the substantial adverse publicity which has already resulted from the untoward action of respondents. We accordingly hold, under the circumstances here present, that petitioners have shown both an urgency and necessity of sufficient magnitude to warrant extraordinary relief.

The primary issue posed is whether the stipulation of dismissal is effective. We hold that it is. In pertinent part, NRCP 41(a)(1) reads as follows:

> [a]n action may be dismissed by the plaintiff upon repayment of defendants' filing fees, *without order of the court* . . . (ii) by filing a stipulation of dismissal signed by all parties who have appeared in the action. (Emphasis supplied.)

Once the stipulation has been signed and filed, dismissal is effectuated automatically without need of judicial sanction or affirmation. First National Bank of Toms River, N.J. v. Marine City, Inc., 411 F.2d 674 (3rd Cir. 1969). This Court has previously held that the notice of dismissal under NRCP 41(a)(1)(i) ''closes the file. There is nothing the defendant can

do to fan the ashes of that action into life and the court has no role to play. This is a matter of right running to the plaintiff and may not be extinguished or circumscribed by adversary or court.'' Federal Sav. and Loan Ins. Corp. v. Moss, 88 Nev. 256, 495 P.2d 616 (1972). The only difference between subsection (i) and subsection (ii) of the rule is that the former is a unilateral dismissal by plaintiff before issues are joined and the latter is a stipulated dismissal which may be filed at any time. In neither case may the court intervene or otherwise affect the dismissal. In both instances, the action is terminated and the court is without further jurisdiction in the matter. The language of the rule is clear.

Respondents nevertheless seek to avoid the effect of the dismissal by adverting to a continuing jurisdiction in the action by reason of NRCP 17(c) which, in applicable part, reads as follows:

> The court shall appoint a guardian ad litem for an infant or incompetent person not otherwise represented in an action or shall make such other order as it deems proper for the protection of the infant or incompetent person.

It is argued that because the respondent district judge, who took no action sua sponte either prior to or during trial with respect to competency or guardianship, is of the opinion that Buckholt is incompetent, respondents retain jurisdiction over Buckholt and must approve any compromise settlement of the action.[3] Such a position is untenable. The cited rule, by clear inference, requires the court, ordinarily upon motion of a party or by its own motion, to provide the protection of a guardian or special order by the time of the commencement of trial. Under some unusual circumstances, the rule would undoubtedly support the invocation of such protective measures during trial. It is even conceivable that a rare occasion could develop where the rule would accommodate, upon motion of a party, some type of protective order or guardianship after trial and before entry of judgment. It strains the rule beyond reason, however, to include the present situation whereby respondents, sua sponte, and in excess of fifteen months after trial, seek to avoid a stipulated dismissal by imposing on the parties a retroactive, unilateral determination of incompetence.[4] And such determination was made without a hearing, was contrary to the

---

[3]NRS 159.093 does require prior approval by court order of any compromise settlement of a chose in action by a ward's guardian. In the present action, we have neither a ward nor a guardian.

[4]The term ''determination'' is used advisedly. It is clear that a mere suspicion or opinion of incompetence, never acted upon by the district court, would hardly serve as a basis for vitiating the stipulation of dismissal.

position of the parties, and was without evidence of fraud or overreaching on the part of any of the parties or their counsel. Indeed, for all we know, the settlement prompting the stipulation of dismissal may be more favorable to Buckholt than the judgment entered by respondents.[5] In any event, if evidence surfaces which would indicate that the stipulation was the product of deceit, or was entered into at the calculated detriment of an unadjudicated incompetent, relief could be afforded through an appropriate proceeding or action.

In summary, since the parties duly signed and filed an effective stipulation of dismissal, respondents' findings of fact, conclusions of law and judgment are void ab initio, a complete and total nullity without force or effect. The jurisdiction of the respondents ended with the filing of the stipulation of dismissal. Accordingly, we order the issuance of a peremptory writ of mandate compelling respondents to vacate the judgment below and to expunge said judgment together with related findings of fact and conclusions of law from the records of the court.

GUNDERSON, C. J., MANOUKIAN and SPRINGER, JJ., and ZENOFF, SR. J.,[6] concur.

———

[5] During oral argument, counsel for petitioners represented to this Court that the settlement was, in fact, more favorable to Buckholt than the judgment.

[6] The Chief Justice designated THE HONORABLE DAVID ZENOFF, Senior Justice, to sit in the place of THE HONORABLE JOHN MOWBRAY, Justice, who voluntarily disqualified himself in this case. Nev. Const., art. 6 § 19; SCR 10.