**Rosa RIOS, Plaintiff,**

v.

**Fernando MIRELES, a/k/a Blas Rios, Defendant–Appellant,**

**and**

**Evelyn L. Garcia, f/k/a Evelyn L. Mireles, Defendant–Appellee.**

No. 95CA1249.

Colorado Court of Appeals, Div. V.

Aug. 22, 1996.

Rehearing Denied Sept. 26, 1996.

Certiorari Denied May 27, 1997.

Stevens, Littman & Biddison, L.L.C., Craig A. Weinberg, Boulder, for Defendant–Appellant.

Kirk Brush, Fort Collins, for Defendant–Appellee.

Opinion by Judge CASEBOLT.

This is a declaratory judgment proceeding involving garnishment of a workers' compensation award to enforce a judgment for child support arrearages due from the injured worker. Defendant Fernando Mireles, a/k/a Blas Rios (Mireles), appeals the trial court's determination of the garnishable portion of the award and the allowance of interest thereon. We modify the judgment and, as modified, affirm.

Mireles was previously married to defendant, Evelyn Garcia and later to plaintiff, Rosa Rios. He had children by both marriages. Both former spouses obtained judgments against Mireles for child support arrearages.

Mireles received a workers' compensation award in the amount of $45,000, incurring attorney fees and costs therefor in the amount of $9,244.44. Garcia learned of the workers' compensation award and garnished it to enforce her judgment for $35,000, as did plaintiff, who had obtained a judgment for $29,388.29. Additionally, plaintiff initiated this declaratory judgment action, in which she requested the court to determine the rights of herself, Garcia, and Mireles to the proceeds of the award.

All parties stipulated that the attorney who assisted Mireles in obtaining the workers' compensation award should receive $9,244.44, and that amount was paid from the $45,000 award. The parties further agreed that Garcia would immediately receive $11,-620 from the award, because her share of the award would be at least that amount. The trial court approved these stipulations.

The trial court was requested to determine the amount garnishable under the applicable statutes, to whom the garnished funds should be paid, and whether Mireles was entitled to

offset his workers' compensation attorney fees and costs before the garnishable amount was calculated. The trial court determined that sixty-five percent of the award was available for garnishment and that the remaining thirty-five percent was exempt. However, it also held that Mireles' attorney fees and costs for his workers' compensation attorney were payable from his exempt portion.

The court further determined that, because the award was not large enough to satisfy both child support judgments and because Garcia had filed her garnishment first, only Garcia could obtain a share of the workers' compensation award. Finally, the trial court ordered that Garcia should receive interest on the balance due her "as provided by law." This appeal by Mireles followed.

## I.

Mireles asserts that the trial court erred in not first subtracting the attorney fees and costs incurred for his workers' compensation attorney from the $45,000 award before computing the percentage amount available for garnishment by Garcia. We disagree.

## A.

■ Section 13–54–104, C.R.S. (1987 Repl.Vol. 6A) governs the amount of earnings available for garnishment by judgment creditors. As pertinent here, the statute authorizes the garnishment of "disposable earnings." "Earnings" includes workers' compensation awards.

When judgments for child support are involved, § 13–54–104(3), C.R.S. (1987 Repl. Vol. 6A) provides, in pertinent part:

(b)(I) The maximum part of the aggregate disposable earnings of an individual for any workweek which is subject to garnishment or levy under execution or attachment to enforce any order for the support of any person shall not exceed:

(A) Where such individual is supporting his spouse or dependent child, other than a spouse or child with respect to whose support such order is used, fifty percent of such individual's disposable earnings for that week; and

(B) Where such individual is not supporting a spouse or dependent child as described in sub-subparagraph (A) of this subparagraph (I), sixty percent of such individual's disposable earnings for that week;

(II) With respect to the disposable earnings of any individual for any workweek, the fifty percent ... shall be deemed to be fifty-five percent and the sixty percent ... shall be deemed to be sixty-five percent if and to the extent that such earnings are subject to garnishment ... to enforce a support order with respect to a period which is prior to the twelve-week period which ends with the beginning of such workweek.

The statute states that "*disposable* earnings" are garnishable. That term is defined to mean "that part of the earnings of any individual remaining after the deduction from those earnings of any amounts required by law to be withheld." Section 13–54–104(1)(a), C.R.S. (1986 Repl.Vol. 6A).

Mireles claims that the amount of an attorney's lien is "required by law to be withheld," and therefore should not be calculated as part of the garnishable "disposable earnings." While there is no evidence in the record to indicate that any attorney's lien was actually asserted, even if we assume, without deciding, that an attorney's lien existed and was asserted here, we must disagree with this contention.

■ The phrase "required by law to be withheld" is not separately defined in the statute. Accordingly, we must look to the intention of the General Assembly in determining the meaning of this phrase. *People v. McNeese*, 892 P.2d 304 (Colo.1995). We first look to the plain language of the statute and give effect to statutory terms in accordance with their commonly accepted meaning. *Jones v. Cox*, 828 P.2d 218 (Colo.1992). When the statutory language is clear and unambiguous, there is no need to resort to interpretive rules and statutory construction. *Griffin v. S.W. Devanney & Co., Inc.*, 775 P.2d 555 (Colo.1989).

"Require" in its ordinary context means to order or compel. *See Black's Law Dictio-*

*nary* 1172 (5th ed.1979). Therefore, a party cannot be *required* to withhold payments due to another absent some kind of direction imposed by the law, such as a valid garnishment, court or administrative order, or other statutory mandate.

"Withhold" means, *inter alia,* to retain in one's possession that which belongs to or is claimed or sought by another. *See Black's Law Dictionary* 1437 (5th ed.1979). As such, the word is directed to the stakeholder of the particular fund. Thus, "withheld" in the context of the garnishment exemption statute means withheld by the employer.

Hence, if the employer is compelled or ordered by law to withhold payments due to the employee, such payments are not part of "disposable earnings."

Section 5–5–105(1)(a), C.R.S. (1992 Repl. Vol. 2), a portion of the Colorado Consumer Credit Code that restricts garnishment in certain situations, uses the phrase "disposable earnings" as well. Official Comment 3 to that statute states, in pertinent part:

> Disposable earnings are defined to include only those earnings which the debtor can spend after deductions required by law. If the law requires a portion of the debtor's wages to be withheld from him, the debtor has no power of disposition with respect to that portion, and that portion is therefore not included in disposable wages. Thus, amounts required to be withheld for social security or income taxes, amounts withheld pursuant to compulsory retirement, health insurance or similar plans imposed by law and amounts withheld because of a garnishment or levy by another creditor are excluded from "disposable earnings."

An attorney's lien under § 12–5–119, C.R.S. (1991 Repl.Vol. 5A) is simply an asserted charge, security, or encumbrance upon certain property. *See Black's Law Dictionary* 832 (5th ed.1979). In our view, there is no legal requirement for the amount of an attorney's lien to be withheld by an employer until such time as the lien is properly enforced.

Hence, because the record does not disclose that any attorney's lien was properly enforced here, we conclude that the amount of the attorney's lien was not "required to be withheld" within the meaning of the statute. Consequently, the attorney fees were not statutorily required to be deducted before the garnishable percentage was calculated.

## B.

In the alternative, Mireles claims that an attorney's lien has priority over a writ of garnishment for child support. Therefore, he reasons, the lien should have been satisfied from the total award first, and Garcia should have only been entitled to garnish the award amount remaining. Again, we disagree.

In our view, § 14–14–105, C.R.S. (1987 Repl.Vol. 6B) is fully dispositive of Mireles' contention. That statute states, in pertinent part:

> A writ of garnishment for the collection from earnings of judgments for arrearages for child support, for maintenance when combined with child support, for child support debts ... shall be continuing; shall have priority over any garnishment, lien or wage assignment ... and shall require the garnishee to withhold, pursuant to section 13–54–104(3), C.R.S., the portion of earnings subject to garnishment at each succeeding earnings disbursement....

■ Because "earnings" includes workers' compensation benefits under § 13–54–104, and because the word "any" means "all," *see Austin v. Board of County Commissioners,* 702 P.2d 293 (Colo.App.1985), a writ of garnishment for child support arrearages takes priority over an attorney's lien, even though § 12–5–119 C.R.S. (1991 Repl.Vol. 5A) provides that the attorney has a "first" lien upon the specified property. *Cf. In re Marriage of Etcheverry,* 921 P.2d 82 (Colo.App.1996) (public policy prohibits an attorney's charging lien from attaching to child support payments).

Furthermore, because the statute applies here, Mireles' reliance upon Formal Ethics Opinion No. 94 of the Colorado Bar Association and *Collins v. Thuringer,* 92 Colo. 433, 21 P.2d 709 (1933), a case decided before enactment of § 14–14–105, is misplaced.

### C.

Mireles next argues that, under the statute, the maximum amount of a debtor's earnings subject to garnishment is sixty-five percent and that the trial court improperly invaded his thirty-five percent exemption by allowing the attorney fees to be charged against his exempt share. We disagree.

Mireles misperceives the application of § 13–54–104. That statute provides exemptions only from *garnishment*, not from debts. Furthermore, nothing in the statute requires a judgment creditor holding a judgment for child support arrearages to pay, from the sixty-five percent of earnings that is *not* exempt, any attorney fees incurred by the debtor.

We therefore conclude that the trial court's determination that the attorney fees would not be first deducted before computing the percentage of disposable earnings available for garnishment by Garcia was not erroneous.

### II.

■ Mireles next argues that the trial court erred in determining that Garcia could garnish sixty-five percent of his total award instead of fifty-five percent. We find no error.

Section 13–54–104(3), C.R.S. (1987 Repl. Vol. 6A) sets forth the percentage of earnings that may be garnished by a creditor. When the debtor is "supporting his spouse or dependent child, other than a spouse or child with respect to whose support such order is used, fifty percent of [the debtor's] disposable earnings" is subject to garnishment. Section 13–54–104(3)(b)(I)(A), C.R.S. (1987 Repl.Vol. 6A). When the debtor is "not supporting a spouse or dependent child . . . sixty percent" of the disposable earnings is garnishable. Section 13–54–104(3)(b)(I)(B), C.R.S. (1987 Repl.Vol. 6A). However, both of these percentages increase by five percent when the amounts are subject to garnishment because of a support order that has been outstanding for more than twelve weeks. Section 13–54–104(3)(b)(II).

Mireles claims that, because his second former spouse (Rios) has a judgment against

him for child support arrearages, only fifty-five percent of the award should be garnishable. He argues that, by virtue of this second judgment against him, he is "supporting" a spouse and dependent child within the meaning of § 13–54–104(3)(b)(I)(A).

The trial court rejected this argument upon a finding that, in fact, Mireles was not supporting his second former spouse or their children. The trial court interpreted § 13–54–104(3)(b)(I)(A) to allow the lesser percentage only when the debtor is currently and actually supporting other dependents.

Mireles argues that he should be entitled to the greater protection of § 13–54–104(3)(b)(I)(A), allowing only fifty-five percent of the award to be garnished, because he was *obligated* to support another spouse and dependent. He asserts, without citing any authority, that the General Assembly meant to protect those with an obligation to support other dependents, not merely those who actually support dependents.

As we must interpret § 13–54–104 to resolve this issue, our review of the trial court's decision is *de novo*. *Robles v. People*, 811 P.2d 804 (Colo.1991).

■ The primary task of a court in construing a statute is to give effect to the intent of the General Assembly. In determining that intent, we should look first to the plain language of the statute. If the language and intent of the General Assembly may be discerned with reasonable certainty, the statute must be applied as written. *In re Marriage of Tessmer*, 903 P.2d 1194 (Colo.App.1995).

In our view, the intent of the General Assembly in differentiating between parents supporting another spouse or child from parents with no other dependents for the purposes of calculating the percentage of garnishable earnings was to protect the secondary dependents from a parent's financial inability *actually* to support them when the parent's disposable earnings are garnished. Hence, we agree with the trial court's interpretation.

Mireles' proposed interpretation has little to recommend it. Indeed, it would lead to an absurd result, an outcome that should be

avoided in statutory interpretation. *See* § 2–4–201(1)(c), C.R.S. (1980 Repl.Vol. 1B); *Ingram v. Cooper*, 698 P.2d 1314 (Colo.1985). Under Mireles' construction, a debtor could receive a windfall if he or she is obligated to support another dependent but does not perform the obligation. Nothing in the statute indicates that the intent of the General Assembly was to give parents who are in arrears on two court orders for child support any incentive not to pay child support under the second order.

Mireles suggests that our interpretation of the statute will allow a creditor to garnish sixty-five percent of disposable earnings even if the debtor is merely one day late in paying secondary child support. Hence, he reasons, the rate of exemption will be dependent upon haphazard occurrences and lead to uncertain results.

We are not persuaded by this argument. Under the statute, the trial court makes the factual determination whether a debtor is actually supporting other dependents. Nothing in the statute indicates that, if a debtor is one day late in paying secondary child support payments, he or she will be found not to be "actually supporting" other dependents. Nor does our interpretation of the statute require such a technical application of the statute.

Mireles argues that he was actually supporting other dependents. However, the trial court found, as a matter of fact, to the contrary. This finding is supported by the record and thus will not be disturbed on review. *See Page v. Clark*, 197 Colo. 306, 592 P.2d 792 (1979).

### III.

Finally, Mireles asserts that Garcia is not entitled to interest on the amount in dispute in this case. We agree that Garcia is not entitled to more than the amount of interest that has actually accrued upon the remaining amount due.

First, the parties have agreed in their briefs before us that, should she prevail on appeal, Garcia is entitled to the interest that actually accrued between April 1995 and August 1995 upon the amount of $3,885.56,

which was the amount designated initially to pay the second former spouse (Rios) had she prevailed. Because the principal sum mentioned was paid to Garcia in August 1995, no further interest is claimed. Accordingly, on remand, the trial court shall determine the amount of interest that actually accrued on that sum while held in the trust account described. *See* § 5–12–103, C.R.S. (1992 Repl.Vol. 2).

■ The parties contest only the interest due on the remaining amount in dispute on appeal, $13,744.44. The trial court ordered that Garcia should receive the disputed amount "plus any interest as provided by law." No clarification was sought concerning the applicable rate in the trial court.

Garcia argues that she should receive 12% interest on the disputed amount from the date the award was garnished, until she ultimately receives the disputed amount, pursuant to § 14–14–106, C.R.S. (1987 Repl.Vol. 6B). Mireles counters that Garcia should receive no interest at all because the instant matter was a declaratory action whereby the trial court determined only the rights of the parties to the total workers' compensation award, and that to give Garcia interest would be to deprive him of part of his exempt share of the award.

■ Interest on *judgments* accrues only by virtue of statute. *I.M.A., Inc. v. Rocky Mountain Airways, Inc.*, 713 P.2d 882 (Colo. 1986). Section 14–14–106, C.R.S. (1987 Repl. Vol. 6B) allows a judgment creditor to collect interest at 12% "on any arrearages and child support debt due and owing." Section 5–12–102, C.R.S. (1992 Repl.Vol. 2) allows creditors to receive interest at the rate of eight percent when there is no agreement concerning the rate of interest.

However, parties may voluntarily agree to the amount or rate of interest, as long as that rate is not usurious. *See* § 5–12–101 et seq., C.R.S. (1992 Repl.Vol. 2); *Ebrahimi v. E.F. Hutton & Co.*, 794 P.2d 1015 (Colo.App.1989).

Here, the parties executed a stipulation by which it was agreed that the remaining funds would be placed in an interest bearing account to accrue and be paid to the prevailing party. Hence, the amount of interest that

has actually accrued is the amount that the parties have agreed to by contract *as to this fund.* This does not prohibit Garcia from collecting twelve percent on the remaining principal sum due under her judgment; however, that accrual was, in our view, not to be applied to this particular fund after the service of the writ of garnishment.

As to interest on appeal, interest on "judgments for money" that are appealed by the judgment debtor is calculated at two percent above the discount rate if the judgment is affirmed. That interest is payable from the date of entry of judgment in the trial court until satisfaction of the judgment. Section 5–12–106, C.R.S. (1992 Repl.Vol. 2). However, when, as here, there is a written agreement as to the rate of interest, that rate controls.

Consequently, the judgment is modified to award to Garcia the actual amount of interest accrued upon the fund. As modified, the judgment is affirmed, and the cause is remanded to the trial court with directions to determine and award the interest in accordance with the views expressed herein.

RULAND and ERICKSON *, JJ., concur.