HERBERT L. MICHEL, JR., A PROFESSIONAL LAW CORPORATION, PETITIONER, v. THE EIGHTH JUDICIAL DISTRICT COURT OF THE STATE OF NEVADA, IN AND FOR THE COUNTY OF CLARK, AND THE HONORABLE GENE T. PORTER, DISTRICT JUDGE, RESPONDENTS, AND YOLANDA B. CERVANTES; PREFERRED CHIROPRAC-TIC; AND DIAGNOSTIC IMAGING OF SOUTHERN NEVADA, REAL PARTIES IN INTEREST.

No. 34082

February 22, 2001                                    17 P.3d 1003

[Rehearing denied April 5, 2001]

*Your Legal Power* and *Herbert L. Michel, Jr.,* Las Vegas, for Petitioner.

*Beckley, Singleton, Jemison, Cobeaga & List* and *Beau Sterling* and *Daniel F. Polsenberg,* Las Vegas; *Ronald J. Israel,* Las Vegas, for Real Party in Interest Diagnostic Imaging of Southern Nevada.

*Robert M. Ebinger,* Las Vegas, for Real Party in Interest Preferred Chiropractic.

*Yolanda B. Cervantes,* Las Vegas, in Proper Person, Real Party in Interest.

Before YOUNG, ROSE and BECKER, JJ.

## OPINION

*Per Curiam:*

This case arose when petitioner, an attorney, deducted his fees from an arbitration award, placed the remaining funds in interpleader, naming his client and certain medical service providers holding liens to the award as defendants, and then sought to be discharged from the action. The district court refused the petitioner's motion for discharge. Petitioner now seeks an extraordinary writ directing the district court to discharge him from the action. Although we decide that an attorney lien takes priority

over a medical provider lien when an award is insufficient to pay all liens against the award, we conclude that a writ is not appropriate because the petitioner's request for discharge is premature.

## FACTS

On April 7, 1996, Yolanda B. Cervantes and three other members of her family were injured in an automobile accident. Thereafter, Cervantes hired attorney Herbert L. Michel to file a personal injury action on her behalf. Although not supplied in the record, Michel apparently had a contingency fee agreement with Cervantes in which Cervantes agreed to pay Michel forty percent of any amounts recovered.

The defendant in Cervantes' personal injury action did not contest liability, and the parties proceeded to arbitration to resolve the issue of damages. Cervantes claimed that the accident caused soft tissue injuries ·and the death of the fetus she was carrying at the time of the accident. The arbitrator awarded Cervantes $14,705.00 in total damages for her soft tissue injuries, but did not compensate her for medical bills associated with the loss of the fetus because the arbitrator determined that the accident did not cause the loss.

Cervantes had incurred medical bills in the amount of $28,346.26 in treating her injuries. Thus, her arbitration award was insufficient to pay the liens of all of her medical providers. Michel and the medical providers were unable to agree on a prorata share of the arbitration award. Consequently, Michel deducted attorney fees and costs totaling $6,511.73 and interpleaded the remaining $8,193.27, naming Cervantes and the medical service providers as the defendants. Michel then sought to be discharged from the interpleader action.

Diagnostic Imaging of Southern Nevada ("DIS"), one of the interpleaded defendants, failed to file a timely answer in the interpleader action. Consequently, the district court entered default judgment against it in December 1998. Thereafter, in February 1999, DIS filed a motion to set aside the default judgment and a motion nunc pro tunc to file an answer. The motion claimed that, according to NRCP 55(c), there was excusable neglect and good cause to set aside the default judgment for faulty service of process. The district court granted DIS's motions.

In its answer and counterclaim, DIS argued that Michel should disgorge his attorney fees since all liens were "on an equal footing" and requested that all parties to the interpleader action be given a pro-rata share of the total settlement.

On February 19, 1999, the district court denied Michel's motion for discharge from the interpleader action. Michel filed a

motion for reconsideration of the district court's refusal to discharge him. Michel also filed a motion to strike DIS's untimely answer and counterclaim. The district court denied both motions.

Michel then filed this petition for extraordinary relief contending that the district court exceeded its jurisdiction by refusing to discharge him from the interpleader action and by refusing to strike DIS's counterclaim.

## DISCUSSION

An extraordinary writ may issue to arrest the proceedings of the district court when such proceedings exceed the district court's jurisdiction or to compel the court to perform an act that the law requires as a duty resulting from an office, trust, or station. *See* NRS 34.320 (writ of prohibition); NRS 34.160 (writ of mandamus). Petitions for extraordinary relief are addressed to the sound discretion of this court and may only be issued when there is no plain, speedy, and adequate remedy at law. *See Harvey L. Lerer, Inc. v. District Court,* 111 Nev. 1165, 901 P.2d 643 (1995). Michel argues that the district court exceeded its jurisdiction by failing to discharge him from the interpleader action because he has no right, title, or interest whatsoever in the litigation. Michel contends that his attorney lien had absolute priority over the liens of the medical providers, and therefore, his interest in the interpleader action dissolved when he deducted his attorney fees before depositing the remaining proceeds with the district court.[1]

To determine whether the district court has exceeded its jurisdiction or is otherwise required by law to discharge Michel from the action, we must first consider whether attorney liens are, in fact, given priority over other liens. Because we conclude that attorney liens enjoy priority, we must also consider the procedure for perfecting and, ultimately, enforcing the lien.

---

[1]In the alternative, Michel argues that, if he is required to remain in the interpleader action, the district court exceeded its jurisdiction by allowing DIS's answer and counterclaim. Michel petitions this court to issue an extraordinary writ ordering the district court to reinstate the order of default judgment and to strike Diagnostic Imaging's answer and counterclaim. Without deciding whether an extraordinary writ would be Michel's only adequate remedy for the alleged error, we conclude that it is well within the discretion of the district court to set aside an entry of default judgment according to NRCP 60. *See BASF Corp., Inmont Div. v. Jafbros, Inc.,* 105 Nev. 142, 144, 771 P.2d 161, 162 (1989). The record supports the district court's finding of good cause to set aside the default judgment based on faulty service of process. Michel offers no overriding challenge to the district court's conclusion. Therefore, we cannot say that the district court has exceeded its jurisdiction.

## A. *Priority of attorney liens*

NRS 18.015 provides an attorney with a lien for attorney fees against any settlement or judgment obtained:[2]

> 1.   An attorney at law shall have a lien upon any claim, demand or cause of action, including any claim for unliquidated damages, which has been placed in his hands by a client for suit or collection, or upon which a suit or other action has been instituted. The lien is for the amount of any fee which has been agreed upon by the attorney and client . . . .
>
> . . . .
> 3.   The lien attaches to any verdict, judgment or decree entered and to any money or property which is recovered on account of the suit or other action, from the time of service of the notices required by this section.

Although NRS 18.015 does not directly address the issue of priority of attorney liens, Michel argues that this court held that attorney liens are superior to other types of liens, citing *Muije v. A North Las Vegas Cab Co.,* 106 Nev. 664, 799 P.2d 559 (1990). In *Muije,* this court held that an equitable offset took priority over a perfected attorney lien because the attorney lien attached solely to the net judgment after the offset was taken. *See id.* at 667, 799 P.2d at 561. In so concluding, this court then observed that, "[o]nce a net judgment is determined, then the attorney lien is superior to any later lien asserted against that judgment." *See id.*

In *Cetenko v. United California Bank,* 638 P.2d 1299, 1301 (Cal. 1982), cited with approval by this court in *Muije,* the California Supreme Court explained the policy rationale for holding an attorney lien superior to that of a judgment creditor when the funds from the judgment are insufficient to satisfy all liens:

> [P]ersons with meritorious claims might well be deprived of legal representation because of their inability to pay legal fees or to assure that such fees will be paid out of the sum recovered in the latest lawsuit. Such a result would be detri-

---

[2]"In Nevada, there are two types of liens an attorney may hold to ensure that clients pay their attorney fees: (1) a special or charging lien on the judgment or settlement the attorney has obtained for the client, NRS 18.015(1); and (2) a general or retaining lien that entitles an attorney, if discharged by the client, to retain the client's papers, property or money until a court, at the request of the client, requires the attorney to deliver the retained items upon the client's furnishing of payment or security for the attorney fees." *Figliuzzi v. Eighth Judicial District Court,* 111 Nev. 338, 342, 890 P.2d 798, 801 (1995) (citations omitted). Compliance with NRS 18.015(1) is required for the first. *See id.*

> mental not only to prospective litigants, but to their creditors as well.

*Id.* at 1304.

DIS counters that public policy actually favors giving higher or equal priority to medical service provider liens. DIS is concerned that, if medical provider liens are not given priority or equal treatment, "it would not be long before doctors would cease to perform their services until they were paid." *Nicolletti v. Lizzoli,* 177 Cal. Rptr. 685, 689 (Ct. App. 1981) (affirming lower court's priority determination in favor of medical service providers over a statutory judgment creditor based primarily on the time the liens were created). DIS argues further that medical provider liens serve a vital public purpose of promoting the health and well being of the community by allowing assistance to people without the ability to pay, promoting health care to the poor, and encouraging the adequate and prompt treatment of accident victims. *See In re Estate of Cooper,* 532 N.E.2d 236, 239 (Ill. 1988) (determining how to enforce a hospital's lien under the Illinois Hospital Lien Act where the settlement is paid through an annuity).

Although enforcing medical provider liens undoubtedly serves an important public policy interest, DIS fails to cite any authority that actually gives priority to medical service provider liens over attorney liens. Indeed, the weight of authority holds to the contrary—attorney liens come first. *See Hanna Paint Mfg. Co. v. Rodey,* 298 F.2d 371 (10th Cir. 1962); *Cetenko,* 638 P.2d at 1299; *Harlow v. Lloyd,* 809 P.2d 1228 (Kan. Ct. App. 1991); *Barnes v. Verry,* 191 N.W. 589 (Minn. 1923); *Chattanooga Sewer Pipe Works v. Dumler,* 120 So. 450 (Miss. 1929).

In addition to the authority above, we note that NRS 108.600(2) gives attorney liens priority over "hospital liens": "No [hospital] lien shall apply or be allowed against any sum incurred by the injured party for necessary attorney fees, costs and expenses incurred by the injured party in securing a settlement, compromise or recovering damages by an action at law." While DIS argues that hospital liens are distinguishable from medical service provider liens because hospitals treat the seriously injured, the distinction is de minimis. In any event, NRS 108.600(2) represents the general policy that attorney liens take priority over those of medical service providers.

Based on the rationale discussed in *Cetenko* and the policy embodied in NRS 108.600(2), we conclude that attorney liens have priority over medical provider liens and that attorney liens are not subject to distribution on a pro-rata basis.[3] Accordingly,

---

[3]Because we conclude that attorney liens enjoy priority over medical service providers liens, we need not address the parties' contentions regarding the "common fund" doctrine.

we must next determine whether the district court exceeded its jurisdiction or is otherwise required by law to discharge Michel from the interpleader action.

### B. *Procedure for enforcing an attorney lien under NRS 18.015*

Michel argues that he correctly calculated his attorney fees and costs according to his agreement with Cervantes, and therefore the district court must discharge him from the action. DIS counters that Michel must remain a party to the action and disgorge the amount he held back from Cervantes' award so the court can make the appropriate distribution.

In situations such as this, when an attorney holds funds in trust for the client and two or more parties claim interest in the funds, an interpleader action is an appropriate procedure for determining the respective rights of those interested. *See* NRCP 22 (allowing interpleader when the plaintiff in the interpleader action ''is or may be exposed to double or multiple liability'').[4] First, we note that in order to conclusively determine the respective rights of all interested parties as to the entire amount in dispute, the disputed funds must be tendered to the court in their entirety. Simple logic dictates that interpleader cannot protect the interpleading plaintiff from liability arising out of disputed funds that were not covered by the adjudication.

Once the funds have been submitted for judicial distribution, in order to enforce the attorney lien under NRS 18.015, the court must make certain findings and conclusions before distribution. Its findings should include the following:

- Whether the attorney may utilize NRS 18.015 to obtain the fees claimed. *See Harvey L. Lerer, Inc. v. District Court,* 111 Nev. 1165, 1168, 901 P.2d 643, 646 (1995) (concluding that ''NRS 18.015 is inapplicable to purely inter-attorney dis-

---

[4]Our previous opinions cited a common law rule of interpleader that limited the right to interplead to stakeholders claiming no interest in the disputed property or funds. *See, e.g., Farmers Ins. v. Civil Serv. Emp. Ins.,* 94 Nev. 733, 734, 587 P.2d 420, 421 (1978). We recognize, however, that an exception emerged at common law allowing actions in the nature of interpleader, which allowed the stakeholder to claim an interest, as distinguished from strict interpleader, which did not. *See John Hancock Mut. Life Ins. Co. v. Kegan,* 22 F.Supp. 326, 329 (D. Md. 1938). But under the modern approach promulgated in part by the federal interpleader rule, which was adopted in Nevada as NRCP 22, the stakeholder may claim an interest in the property or funds submitted for adjudication, and the common law distinction between the types of interpleader actions is abolished. *See* FRCP 22 advisory committee's notes.

putes . . . which are not predicated on an attorney/client fee agreement'');

- Whether the amount claimed by the lien stems from a judgment or settlement. *See* NRS 18.015(1); *see also Figliuzzi,* 111 Nev. at 342, 890 P.2d at 801 (recognizing that an attorney cannot use NRS 18.015 to enforce an attorney lien if the attorney ''has not obtained a settlement or judgment'' for the client);
- Whether the lien is enforceable: some are not. *See, e.g., Van Cleave v. Osborne, Jenkins & Gamboa,* 108 Nev. 885, 887, 840 P.2d 589, 591 (1992) (concluding that a firm's attorney lien was unenforceable against its former client's settlement after the firm entered into a consent judgment with the former client in a malpractice dispute);
- Whether the attorney lien has been properly perfected according to NRS 18.015(2), which provides that ''[a]n attorney perfects his lien by serving notice in writing, in person or by certified mail, return receipt requested, upon his client and upon the party against whom his client has a cause of action, claiming the lien and stating the interest which he has in any cause of action'';
- Whether there are any setoffs reducing the net amount subject to the attorney lien. *See Muije v. North Las Vegas Cab,* 106 Nev. 664, 799 P.2d 559 (1990) (concluding that a defendant's setoff was superior to an attorney lien where the district court had awarded the defendant an amount for having offered to settle for more than the plaintiff's jury verdict under NRS 17.115(4)(b));
- In extraordinary circumstances, whether equitable factors might affect the net judgment or the priority of the attorney lien. *See, e.g., Rios v. Mireles,* 937 P.2d 840 (Colo. Ct. App. 1996) (concluding that, under Colorado's attorney lien statute, a child support garnishment has priority over an attorney lien); and
- Finally, from the net amount subject to the attorney lien, the court should calculate the amount the attorney is due based upon the ''fee which has been agreed upon by the attorney and client.'' NRS 18.015(1). If the court finds that no agreement governed the attorney/client relationship, then ''the lien is for a reasonable fee.'' *Id.*

After calculating the amount due to the attorney under the lien, the court may then distribute to the attorney his or her share and discharge the attorney from the interpleader action.[5]

---

[5]The parties have neither raised nor briefed the issue of whether Michel has a contractual, fiduciary, or ethical duty to continue to represent Cervantes' interests if the district court discharges him after resolving the attorney lien dispute. Accordingly, we need not address the issue.

Here, although Michel has undertaken some of the steps necessary to enforce his attorney lien, many issues remain to be resolved before he can be discharged. For instance, although Michel has interpleaded the parties in interest, he has not submitted the disputed amount in full for adjudication. Furthermore, although we conclude that Michel's attorney liens have priority over medical service provider defendant's liens, the record indicates that the district court has not had the opportunity to make findings regarding the additional considerations above. Accordingly, we conclude that Michel's request to be discharged from the action is premature.

## CONCLUSION

We conclude that an attorney lien enjoys priority over a medical service provider lien. Nevertheless, because certain issues remain unresolved regarding the enforcement of Michel's lien, we decline to issue the extraordinary relief requested.