OPINION
THOMAS, Circuit Judge:
This case requires us to decide whether an attorney who prepares an order to show cause for a judge is entitled to absolute quasi-judicial immunity. We hold that he is not and affirm the judgment of the district court.
I
Freddy Joe Burton (“Burton”) was injured in a bicycle-automobile collision. He incurred $271,101.87 in related medical expenses and loans and retained Jan Paul Koch (“Koch”) to file a lawsuit on his behalf. Burton granted certain creditors, including Valley Hospital Medical Center, liens on his personal injury claim. Valley Hospital then sold its account receivable to Infinity Capital Management (“Infinity”), the president of which is Anne Pantelas (“Pantelas”). Koch settled Burton’s personal injury claim for $185,000.
Koch placed the settlement funds in his client trust fund account and paid himself his attorney fee and costs. Koch then recommended that Burton declare bankruptcy and hire bankruptcy attorney David Crosby (“Crosby”). After paying a retainer fee to Crosby and receiving his personal injury settlement exemption, Burton had $104,088.10 left of his settlement in the trust fund account.
That same month, Nancy Allf (“Allf’), who represented Infinity at the time, told Koch that a state interpleader action would resolve the interests of the lien holders more quickly than the bankruptcy court. Infinity filed an interpleader lawsuit in state court against all other similarly situated lien holders making a claim upon Burton’s settlement. Neither Burton *957 nor Koch were named as parties in the state interpleader case. The Honorable Ronald Israel (“Judge Israel”) was assigned to the case. Salvatore Gugino (“Gugino”) was substituted for Allf as Infinity’s attorney of record.
Crosby filed Burton’s bankruptcy petition in bankruptcy court. Four days later, Judge Israel held a status hearing on the state interpleader case, and Koch attended that hearing at Judge Israel’s request. At the hearing, Gugino appeared for Infinity, and Steven Baker (“Baker”) appeared for one of the defendants in the case. Judge Israel questioned Koch as to why he had not interpled all of the funds that Burton had received for his settlement to the court clerk as required by Michel v. Eighth Judicial District Court ex rel. County of Clark, 117 Nev. 145, 17 P.3d 1003 (2001). Koch informed Judge Israel that Burton had filed bankruptcy and he would be depositing the remaining settlement funds with the bankruptcy clerk. Those present at the hearing were confused about the proper course to take given the bankruptcy proceeding and the fact that Burton was neither a plaintiff nor defendant in interpleader. Both Gugino and Baker voiced concern about the inter-pleader case moving forward in light of the bankruptcy. Judge Israel ordered the parties to appear approximately two months later for a status hearing regarding the state of the bankruptcy proceeding.
Three days before the status hearing, Gugino sent all parties to the interpleader case and Koch a letter with a copy of the minutes from the prior hearing and an update on the bankruptcy case, including both an explanation of his initial attempt to resolve the interpleader issue with the trustee and confirmation that Koch had deposited the settlement funds with the trustee.
Koch did not appear at the status hearing. At the hearing, Gugino handed a copy of his letter to Judge Israel, and he informed the court that Koch had deposited the settlement funds with the bankruptcy trustee. Judge Israel responded, “I ordered Mr. Koch to place all the funds in here.... I’m going to issue an order to show cause. I want Mr. Koch to appear and show — tell us why he didn’t deposit his attorney’s fees into — pursuant to Michel. ... I want him to personally appear and tell why he hasn’t; otherwise, I’ll hold him in contempt.” Neither Gugino nor Baker voiced any opposition to Judge Israel in light of the bankruptcy. The following colloquy then occurred:
MR. GUGINO: Well, the plaintiff in the case, the injured party was — in addition to the — the money that Mr. Koch was giving himself for his attorney’s fees, he also paid Mr. Burton 16,500 under NRS 21.090. So.
MR. BAKER: Which is a fraudulent transfer.
THE COURT: So—
MR. GUGINO: I — I don’t know what to say.
THE COURT: — is—well, obviously the bankruptcy court’s going to have to deal with part of that, but who wants to prepare the order?
MR. GUGINO: What day?
THE COURT: Mr. Gugino?
MR. GUGINO: IT prepare it, Your Honor.
THE COURT: Thirty days.
THE CLERK: Thirty days, we’ll set it for July 11th and that’ll be 9 a.m.
MR. GUGINO: Okay.
On that same day, Gugino prepared a proposed order to show cause and sent it to all of the interpleader parties and Koch. A cover letter stated that, unless Gugino heard from them to the contrary, he would *958 assume it met with their approval and would submit it to the court for the judge’s signature. The proposed order ordered Koch to appear “to explain to [the court] why he should not be held in contempt for failure to comply with Michel ... as directed by [the court].” That same day, Koch replied by sending Gugino a fax objecting to the order and stating, “You are violating the automatic stay provisions of 11 U.S.C. § 362.”
The following day, Koch sent Gugino a fax and a fourpage letter. The letter stated that the automatic stay prevented proceedings directed toward the property of the bankruptcy estate, threatened that he would file a complaint against Gugino, Infinity, Pantelas, and Judge Israel if “at any time [he] bec[a]me aware of further action in the Infinity litigation (pursued by anyone ),” and made personal attacks on Gugi-no’s competency. The fax stated that the complaint was “90% complete” and included a draft copy of the seven-page complaint.
The order drafted by Gugino was never filed. Instead, Judge Israel faxed the minute order from the June 6th status check hearing to the parties of the interpleader case and Koch. The minute order stated:
Mr. Gugino noted the letter provided to the Court changes things. Mr. Gugino further noted Mr. Koch took the remaining money and gave it to the bankruptcy trustee. Colloquy regarding Mr. Koch not present today and issues regarding following the Michel Case. Court directed Counsel to prepare an order for a show cause hearing and Court set hearing.
COURT ORDERS All parties to appear, including Mr. Koch, to advise the Court of;
1.The bankruptcy.
2. Why the bankruptcy can effect [sic] and stay these proceedings, since Mr. Burton is not a party to this action.
3. Why Mr. Koch should interplead the entire proceeds of the settlement per the Michel case into this court immediately.
4. Status on lifting the stay.
COURT ORDERED Matter re-set from a show cause hearing to a Status Check regarding: bankruptcy / interpleader.
Later that day, Gugino faxed a letter to Koch that included the minute order. The letter stated in part:
First, let me make it clear that you did not attend the June 6, 2011 status check before Judge Israel, even though you were aware of the hearing date. Had you been present, all of this might have been avoided. At the hearing, I presented the Court with my June 3, 2011 letter and attachments, which had been previously sent to you and the attorneys involved in this litigation. It was my expectation that we would be going forward in the Bankruptcy Court under some sort of stipulation and order. However, at the hearing, Judge Israel ordered that an Order To Show Cause be issued against you, and he then directed me to prepare the Order. This was not my idea, nor did I recommend it to the Court. After preparing a draft of the proposed Order, I sent it to your attention for your review. Had you called me upon receipt, you could have avoided incurring the hours you claim to have spent preparing a class action complaint against my client, her company, myself and Judge[ ] Israel....
Gugino also included a footnote stating, “It is not my habit to refuse to obey a directive of a judge. I simply followed his directive to prepare a draft of the order. ...” Later that same day, Koch faxed a response to Gugino stating, “In response *959 to your 6-9-11 letter.... Attached hereto please find the rough draft of the Federal Lawsuit that I am filing.”
The following day, Koch sent Gugino a copy of a Memorandum in Support of Jurisdiction by fax and stated in part, “Why don’t you dismiss the interpleader, and get your funds from the bankruptcy trustee? Otherwise, what do you suggest? I’ll hold up and won’t send copies to Judge Israel, pending your reply.”
Nearly a month later, Koch sent Gugino a fax stating, “Don’t know why you never responded to my last entreaty. Guess it matters not. It’s been filed. Here’s a copy. See ya in Court.”
Koch then filed a complaint in federal district court, on behalf of himself and Burton, alleging that all defendants violated the automatic-stay provision of 11 U.S.C. § 362(a). He claimed actual damages of $1,000, plus attorney fees, and sought “damages in excess of $10,000.”
Judge Israel filed a motion to dismiss the complaint, arguing that Koch’s claims were barred as a matter of law by the doctrine of absolute judicial immunity. Gugino filed a separate motion to dismiss, arguing that because his acts were taken under the direction of Judge Israel, Koch’s claims were barred by the doctrine of absolute quasi-judicial immunity. The district court converted both motions to dismiss into motions for summary judgment because the parties attached various exhibits outside of the pleadings. The court held Judge Israel was entitled to absolute judicial immunity. However, the court held “Gugino [was] not entitled to quasi-judicial immunity because Gugino volunteered to prepare the order in direct violation of the stay. Gugino had a duty to not prepare or present the order.” This appeal followed.
We review a district court’s order denying a converted motion for summary judgment de novo. Lewis v. United States, 641 F.3d 1174, 1176 (9th Cir.2011). We must view the evidence in the light most favorable to the nonmoving party, here Koch and Burton. Cnty. of Tuolumne v. Sonora Cmty. Hosp., 236 F.3d 1148, 1154 (9th Cir.2001). The proponent of a claim for absolute immunity “bears the burden of establishing that such immunity is justified.” Curry v. Castillo (In re Castillo), 297 F.3d 940, 947 (9th Cir.2002).
II
This case does not concern whether the automatic stay is violated when an attorney drafts, at the behest of a judge, an order to show cause that was never filed, much less whether such an act is actionable in a damage suit under 11 U.S.C. § 362(k).[1] Rather, the sole question in this appeal is whether an attorney who drafts an order at the request of a judge is entitled to absolute quasi-judicial immunity. We conclude that he is not.
Absolute judicial immunity “insulates judges from charges of erroneous acts or irregular action.” Castillo, 297 F.3d at 947 (citing Forrester v. White, 484 U.S. 219, 227-28, 108 S.Ct. 538, 98 L.Ed.2d 555 (1988)). Absolute immunity “is not reserved solely for judges, but extends to nonjudicial officers for ‘all claims relating to the exercise of judicial functions.’ ” Id. (quoting Burns v. Reed, 500 U.S. 478, 499, 111 S.Ct. 1934, 114 L.Ed.2d 547 (1991) (Scalia, J., concurring in part and dissent *960 ing in part)). “The Supreme Court has been quite sparing in its recognition of absolute immunity, and has refused to extend it any further than its justification would warrant.” Id. (internal quotation marks and alterations omitted). The justification for absolute immunity is the protection of the judicial process. It shields independent and impartial adjudication and prevents the “deflection of [an officer’s] energies from his public duties.” Burns, 500 U.S. at 485, 111 S.Ct. 1934. The Supreme Court has “made it clear that it is the interest in protecting the proper functioning of the office, rather than the interest in protecting its occupant, that is of primary importance.” Kalina v. Fletcher, 522 U.S. 118, 125, 118 S.Ct. 502, 139 L.Ed.2d 471 (1997).
Thus, we take a functional approach to determining whether a nonjudicial officer is entitled to absolute quasi-judicial immunity by looking to “the nature of the function performed and not to the identity of the actor performing it.” Castillo, 297 F.3d at 948. To qualify for absolute immunity, the function performed must be a judicial act with “a sufficiently close nexus to the adjudicative process.” Id. However, “it is only when the judgment of an official other than a judge involves the exercise of discretionary judgment that judicial immunity may be extended to that nonjudicial officer.” Id. at 949. The Supreme Court established the requirement for discretionary judgment in Antoine v. Byers & Anderson, Inc., where it declined to extend the immunity to court reporters because transcribing verbatim transcripts does not involve the level of authoritative or “discretionary decision-making that the doctrine of judicial immunity is designed to protect.” 508 U.S. 429, 435, 113 S.Ct. 2167, 124 L.Ed.2d 391 (1993). To be protected, the function performed must “involve the exercise of discretion in resolving disputes.” Castillo, 297 F.3d at 948 (citing Antoine, 508 U.S. at 435, 113 S.Ct. 2167).
Before turning to the functional approach, we first inquire into the immunity historically accorded attorneys. Id. We have afforded quasi-judicial immunity to bankruptcy trustees because they were exercising judgments while performing acts closely related to the judicial process. Id. at 946-47; see also Lonneker Farms, Inc. v. Klobucher, 804 F.2d 1096, 1097 (9th Cir.1986) (holding that “a trustee in bankruptcy ... is entitled to derived judicial immunity because he is performing an integral part of the judicial process”). For similar reasons, we afforded United States Trustees quasi-judicial immunity. Balser v. Dep’t of Justice, 327 F.3d 903, 910 (9th Cir.2003). Absolute immunity has been extended to attorneys for performing the duties of a prosecutor, Imbler v. Pachtman, 424 U.S. 409, 431, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976); Butz v. Economou, 438 U.S. 478, 517, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978), but the Supreme Court has not extended the immunity beyond the prosecutorial function. Even court-appointed defense attorneys do not enjoy immunity because despite being “officers” of the court, “attorneys [are not] in the same category as marshals, bailiffs, court clerks or judges.” Ferri v. Ackerman, 444 U.S. 193, 202 n. 19, 100 S.Ct. 402, 62 L.Ed.2d 355 (1979). In Ferri, the Supreme Court declined to extend immunity because “the primary office performed by appointed counsel parallels the office of privately retained counsel” where an attorney owes a duty to his client, not the public. Id. at 204, 100 S.Ct. 402. This implied disinclination to grant immunity to private counsel was solidified after the Supreme Court concluded that “private actors are not entitled to the absolute immunity granted to some government officials, *961 such as prosecutors and judges.” Kimes v. Stone, 84 F.3d 1121, 1128 (9th Cir.1996) (citing Wyatt v. Cole, 504 U.S. 158, 164-65, 112 S.Ct. 1827, 118 L.Ed.2d 504 (1992)).
Not only does this precedent forestall extending absolute quasi-judicial immunity to Gugino, the functional approach, which requires us to look past his identity as an attorney and focus only on the function he performed, also denies Gugino immunity. Although the function performed by Gugino had a close nexus to the judicial process — he prepared the order during a judicial proceeding, and orders are a basic and integral part of judicial proceedings— preparing the order did not involve the kind of discretionary judgment that is protected by the doctrine.
Preparing an order on behalf of a court does require the preparer to make important decisions about language and tone, but the ultimate discretion in determining whether an order will be integral to resolving a dispute lies with the judge, not the preparer. Only the judge can exercise the unique authority vested in him by signing an order of the court. Because the judge must approve of an order before it is filed and before it can affect the course of the judicial proceeding, it cannot be said that simply preparing an order involves the “substantial discretion” that results in absolute immunity. See Castillo, 297 F.3d at 951.
Gugino argues that he is entitled to absolute immunity because a law clerk would have been entitled to absolute immunity for preparing the order. Although law clerks are entitled to absolute immunity and certainly prepare orders, an attorney cannot be compared to a law clerk, who is “probably the one participant in the judicial process whose duties and responsibilities are most intimately connected with the judge’s own exercise of the judicial function.” Moore v. Brewster, 96 F.3d 1240, 1245 (9th Cir.1996) (internal quotation marks omitted).
Gugino also contends he is entitled to absolute quasi-judicial immunity because he was doing what Judge Israel asked him to do. Other circuits have held that a function undertaken pursuant to the explicit direction of a judge entitles the subordinate to absolute immunity. Kincaid v. Vail, 969 F.2d 594, 600-01 (7th Cir.1992) (citing examples from five circuits extending immunity for carrying out judicial directives). We have previously held that court clerks are entitled to absolute immunity even in the absence of a judicial directive so long as the acts were not done “in the clear absence of all jurisdiction.” Mullis v. United States Bankruptcy Court for Dist. of Nev., 828 F.2d 1385, 1390 (9th Cir.1987). However, immunity was extended in all of those cases to court officials, and Gugino is not a court official. Additionally, the district court here characterized Gugino’s action as one he volunteered to do. Gugino maintains that he was directed to prepare the order, and Judge Israel’s minute order stated that “the Court directed Counsel to prepare an order for a show cause hearing.” Nevertheless, when we view the transcript of the hearing in a light most favorable to Burton and Koch, we resolve the inference in their favor. Gugino responded when Judge Israel asked, “who wants to prepare the order?” and, unlike the first status hearing, Gugino did not voice any concern about preparing the order in light of the bankruptcy.
Finally, Gugino argues that policy reasons support the extension of absolute immunity here. He asserts that having attorneys prepare orders preserves scarce judicial resources, and that the practice would be inhibited if attorneys were exposed to civil liability for doing so. Of course, nothing in our holding necessarily *962 subjects an attorney to liability. We simply decline to extend the doctrine of absolute immunity. Judicial economy does not provide a justification for altering our case law. In addition, affording immunity to attorneys for drafting orders might immunize improper actions where attorneys did knowingly and wilfully violate the automatic stay by presenting orders violating the stay to judges who were not apprised of the bankruptcy filing.
IV
On the narrow question presented by this appeal, we conclude that an attorney preparing an order for a judge is not entitled to quasi-judicial immunity. We do not reach the question of whether such an action violated the automatic stay, or whether it was actionable under 11 U.S.C. § 362(k).
AFFIRMED.

. 11 U.S.C. § 362(k)(l), under which this action was brought, provides that, subject to certain exceptions, “an individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys’ fees, and, in appropriate circumstances, may recover punitive damages.”