**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

FREDDY JOE BURTON; JAN PAUL KOCH,

*Plaintiffs-Appellees*,

v.

INFINITY CAPITAL MANAGEMENT; ANNE PANTELAS; SALVATORE C. GUGINO,

*Defendants-Appellants*,

and

RONALD J. ISRAEL,

*Defendant*.

No. 12-15618

D.C. No.
2:11-cv-01129-
RCJ-PAL

OPINION

Appeal from the United States District Court
for the District of Nevada
Robert Clive Jones, Chief District Judge, Presiding

Argued and Submitted
November 7, 2013—San Francisco, California

Filed June 4, 2014

Before: Sidney R. Thomas, Ronald Lee Gilman[*],
and Johnnie B. Rawlinson, Circuit Judges.

Opinion by Judge Thomas;
Dissent by Judge Gilman

---

## SUMMARY[**]

---

### Quasi-Judicial Immunity

Affirming the district court's denial of summary judgment, the panel held that an attorney who prepared an order to show cause for a judge was not entitled to absolute quasi-judicial immunity on a claim of violation of the automatic stay provision of the Bankruptcy Code.

Dissenting, Judge Gilman wrote that the attorney was entitled to quasi-judicial immunity because he was in effect acting as the judge's law clerk.

---

### COUNSEL

Kenneth R. Lund (argued) and Brian K. Terry, Thorndal, Armstrong, Delk, Balkenbush & Eisinger, Las Vegas, Nevada, for Defendant-Appellant Salvatore C. Gugino.

---

[*] The Honorable Ronald Lee Gilman, Senior Circuit Judge for the U.S. Court of Appeals for the Sixth Circuit, sitting by designation.

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

Daniel R. McNutt (argued), Carbajal & McNutt, LLP, Las Vegas, Nevada, for Defendants-Appellants Infinity Capital Management and Anne Pantelas.

Jan Paul Koch (argued), Law Office of Jan Paul Koch, Las Vegas, Nevada; Robert J. Kossack, Kossack Law Offices, Las Vegas, Nevada, for Plaintiffs-Appellees Freddy Joe Burton and Jan Paul Koch.

## OPINION

THOMAS, Circuit Judge:

This case requires us to decide whether an attorney who prepares an order to show cause for a judge is entitled to absolute quasi-judicial immunity. We hold that he is not and affirm the judgment of the district court.

I

Freddy Joe Burton ("Burton") was injured in a bicycle-automobile collision. He incurred $271,101.87 in related medical expenses and loans and retained Jan Paul Koch ("Koch") to file a lawsuit on his behalf. Burton granted certain creditors, including Valley Hospital Medical Center, liens on his personal injury claim. Valley Hospital then sold its account receivable to Infinity Capital Management ("Infinity"), the president of which is Anne Pantelas ("Pantelas"). Koch settled Burton's personal injury claim for $185,000.

Koch placed the settlement funds in his client trust fund account and paid himself his attorney fee and costs. Koch

then recommended that Burton declare bankruptcy and hire bankruptcy attorney David Crosby ("Crosby"). After paying a retainer fee to Crosby and receiving his personal injury settlement exemption, Burton had $104,088.10 left of his settlement in the trust fund account.

That same month, Nancy Allf ("Allf"), who represented Infinity at the time, told Koch that a state interpleader action would resolve the interests of the lien holders more quickly than the bankruptcy court. Infinity filed an interpleader lawsuit in state court against all other similarly situated lien holders making a claim upon Burton's settlement. Neither Burton nor Koch were named as parties in the state interpleader case. The Honorable Ronald Israel ("Judge Israel") was assigned to the case. Salvatore Gugino ("Gugino") was substituted for Allf as Infinity's attorney of record.

Crosby filed Burton's bankruptcy petition in bankruptcy court. Four days later, Judge Israel held a status hearing on the state interpleader case, and Koch attended that hearing at Judge Israel's request. At the hearing, Gugino appeared for Infinity, and Steven Baker ("Baker") appeared for one of the defendants in the case. Judge Israel questioned Koch as to why he had not interpled all of the funds that Burton had received for his settlement to the court clerk as required by *Michel v. Eighth Judicial District Court ex rel. County of Clark*, 17 P.3d 1003 (Nev. 2001). Koch informed Judge Israel that Burton had filed bankruptcy and he would be depositing the remaining settlement funds with the bankruptcy clerk. Those present at the hearing were confused about the proper course to take given the bankruptcy proceeding and the fact that Burton was neither a plaintiff nor defendant in interpleader. Both Gugino and Baker voiced

concern about the interpleader case moving forward in light of the bankruptcy. Judge Israel ordered the parties to appear approximately two months later for a status hearing regarding the state of the bankruptcy proceeding.

Three days before the status hearing, Gugino sent all parties to the interpleader case and Koch a letter with a copy of the minutes from the prior hearing and an update on the bankruptcy case, including both an explanation of his initial attempt to resolve the interpleader issue with the trustee and confirmation that Koch had deposited the settlement funds with the trustee.

Koch did not appear at the status hearing. At the hearing, Gugino handed a copy of his letter to Judge Israel, and he informed the court that Koch had deposited the settlement funds with the bankruptcy trustee. Judge Israel responded, "I ordered Mr. Koch to place all the funds in here. . . . I'm going to issue an order to show cause. I want Mr. Koch to appear and show – tell us why he didn't deposit his attorney's fees into – pursuant to *Michel*. . . . I want him to personally appear and tell why he hasn't; otherwise, I'll hold him in contempt." Neither Gugino nor Baker voiced any opposition to Judge Israel in light of the bankruptcy. The following colloquy then occurred:

> MR. GUGINO: Well, the plaintiff in the case, the injured party was – in addition to the – the money that Mr. Koch was giving himself for his attorney's fees, he also paid Mr. Burton 16,500 under NRS 21.090. So.
>
> MR. BAKER: Which is a fraudulent transfer.

THE COURT: So –

MR. GUGINO: I – I don't know what to say.

THE COURT: – is – well, obviously the bankruptcy court's going to have to deal with part of that, but who wants to prepare the order?

MR. GUGINO: What day?

THE COURT: Mr. Gugino?

MR. GUGINO: I'll prepare it, Your Honor.

THE COURT: Thirty days.

THE CLERK: Thirty days, we'll set it for July 11th and that'll be 9 a.m.

MR. GUGINO: Okay.

On that same day, Gugino prepared a proposed order to show cause and sent it to all of the interpleader parties and Koch. A cover letter stated that, unless Gugino heard from them to the contrary, he would assume it met with their approval and would submit it to the court for the judge's signature. The proposed order ordered Koch to appear "to explain to [the court] why he should not be held in contempt for failure to comply with *Michel* . . . as directed by [the court]." That same day, Koch replied by sending Gugino a fax objecting to the order and stating, "You are violating the automatic stay provisions of 11 U.S.C. § 362."

The following day, Koch sent Gugino a fax and a four-page letter. The letter stated that the automatic stay prevented proceedings directed toward the property of the bankruptcy estate, threatened that he would file a complaint against Gugino, Infinity, Pantelas, and Judge Israel if "at any time [he] bec[a]me aware of further action in the Infinity litigation (pursued by *anyone*)," and made personal attacks on Gugino's competency. The fax stated that the complaint was "90% complete" and included a draft copy of the seven-page complaint.

The order drafted by Gugino was never filed. Instead, Judge Israel faxed the minute order from the June 6th status check hearing to the parties of the interpleader case and Koch. The minute order stated:

> Mr. Gugino noted the letter provided to the Court changes things. Mr. Gugino further noted Mr. Koch took the remaining money and gave it to the bankruptcy trustee. Colloquy regarding Mr. Koch not present today and issues regarding following the *Michel* Case. Court directed Counsel to prepare an order for a show cause hearing and Court set hearing.
>
> . . . .
>
> COURT ORDERS All parties to appear, including Mr. Koch, to advise the Court of;
>
> 1. The bankruptcy.

2. Why the bankruptcy can effect [sic] and stay these proceedings, since Mr. Burton is not a party to this action.

3. Why Mr. Koch should interplead the entire proceeds of the settlement per the *Michel* case into this court immediately.

4. Status on lifting the stay.

COURT ORDERED Matter re-set from a show cause hearing to a Status Check regarding: bankruptcy / interpleader.

Later that day, Gugino faxed a letter to Koch that included the minute order. The letter stated in part:

First, let me make it clear that you did not attend the June 6, 2011 status check before Judge Israel, even though you were aware of the hearing date. Had you been present, all of this might have been avoided. At the hearing, I presented the Court with my June 3, 2011 letter and attachments, which had been previously sent to you and the attorneys involved in this litigation. It was my expectation that we would be going forward in the Bankruptcy Court under some sort of stipulation and order. However, at the hearing, Judge Israel ordered that an Order To Show Cause be issued against you, and he then directed me to prepare the Order. This was not my idea, nor did I recommend it to the Court. After preparing a draft of the

> proposed Order, I sent it to your attention for your review. Had you called me upon receipt, you could have avoided incurring the hours you claim to have spent preparing a class action complaint against my client, her company, myself and Judge[] Israel . . . .

Gugino also included a footnote stating, "It is not my habit to refuse to obey a directive of a judge. I simply followed his directive to prepare a draft of the order . . . ." Later that same day, Koch faxed a response to Gugino stating, "In response to your 6-9-11 letter . . . . Attached hereto please find the rough draft of the Federal Lawsuit that I am filing."

The following day, Koch sent Gugino a copy of a Memorandum in Support of Jurisdiction by fax and stated in part, "Why don't you dismiss the interpleader, and get your funds from the bankruptcy trustee? Otherwise, what do you suggest? I'll hold up and won't send copies to Judge Israel, pending your reply."

Nearly a month later, Koch sent Gugino a fax stating, "Don't know why you never responded to my last entreaty. Guess it matters not. It's been filed. Here's a copy. See ya in Court."

Koch then filed a complaint in federal district court, on behalf of himself and Burton, alleging that all defendants violated the automatic-stay provision of 11 U.S.C. § 362(a). He claimed actual damages of $1,000, plus attorney fees, and sought "damages in excess of $10,000."

Judge Israel filed a motion to dismiss the complaint, arguing that Koch's claims were barred as a matter of law by the doctrine of absolute judicial immunity. Gugino filed a separate motion to dismiss, arguing that because his acts were taken under the direction of Judge Israel, Koch's claims were barred by the doctrine of absolute quasi-judicial immunity. The district court converted both motions to dismiss into motions for summary judgment because the parties attached various exhibits outside of the pleadings. The court held Judge Israel was entitled to absolute judicial immunity. However, the court held "Gugino [was] not entitled to quasi-judicial immunity because Gugino volunteered to prepare the order in direct violation of the stay. Gugino had a duty to not prepare or present the order." This appeal followed.

We review a district court's order denying a converted motion for summary judgment *de novo*. *Lewis v. United States*, 641 F.3d 1174, 1176 (9th Cir. 2011). We must view the evidence in the light most favorable to the nonmoving party, here Koch and Burton. *Cnty. of Tuolumne v. Sonora Cmty. Hosp.*, 236 F.3d 1148, 1154 (9th Cir. 2001). The proponent of a claim for absolute immunity "bears the burden of establishing that such immunity is justified." *Curry v. Castillo (In re Castillo)*, 297 F.3d 940, 947 (9th Cir. 2002).

## II

This case does not concern whether the automatic stay is violated when an attorney drafts, at the behest of a judge, an order to show cause that was never filed, much less whether such an act is actionable in a damage suit under 11 U.S.C.

§ 362(k).[1]  Rather, the sole question in this appeal is whether an attorney who drafts an order at the request of a judge is entitled to absolute quasi-judicial immunity.  We conclude that he is not.

Absolute judicial immunity "insulates judges from charges of erroneous acts or irregular action."  *Castillo*, 297 F.3d at 947 (citing *Forrester v. White*, 484 U.S. 219, 227–28 (1988)).  Absolute immunity "is not reserved solely for judges, but extends to nonjudicial officers for 'all claims relating to the exercise of judicial functions.'"  *Id.* (quoting *Burns v. Reed*, 500 U.S. 478, 499 (1991) (Scalia, J., concurring in part and dissenting in part)).  "The Supreme Court has been quite sparing in its recognition of absolute immunity, and has refused to extend it any further than its justification would warrant."  *Id.* (internal quotation marks and alterations omitted).  The justification for absolute immunity is the protection of the judicial process.  It shields independent and impartial adjudication and prevents the "deflection of [an officer's] energies from his public duties."  *Burns*, 500 U.S. at 485.  The Supreme Court has "made it clear that it is the interest in protecting the proper functioning of the office, rather than the interest in protecting its occupant, that is of primary importance."  *Kalina v. Fletcher*, 522 U.S. 118, 125 (1997).

Thus, we take a functional approach to determining whether a nonjudicial officer is entitled to absolute quasi-

---

[1] 11 U.S.C. § 362(k)(1), under which this action was brought,  provides that, subject to certain exceptions, "an individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages."

judicial immunity by looking to "the nature of the function performed and not to the identity of the actor performing it." *Castillo*, 297 F.3d at 948. To qualify for absolute immunity, the function performed must be a judicial act with "a sufficiently close nexus to the adjudicative process." *Id.* However, "it is only when the judgment of an official other than a judge involves the exercise of discretionary judgment that judicial immunity may be extended to that nonjudicial officer." *Id*. at 949. The Supreme Court established the requirement for discretionary judgment in *Antoine v. Byers & Anderson, Inc.*, where it declined to extend the immunity to court reporters because transcribing verbatim transcripts does not involve the level of authoritative or "discretionary decisionmaking that the doctrine of judicial immunity is designed to protect." 508 U.S. 429, 435 (1993). To be protected, the function performed must "involve the exercise of discretion in resolving disputes." *Castillo*, 297 F.3d at 948 (citing *Antoine*, 508 U.S. at 435).

Before turning to the functional approach, we first inquire into the immunity historically accorded attorneys. *Id.* We have afforded quasi-judicial immunity to bankruptcy trustees because they were exercising judgments while performing acts closely related to the judicial process. *Id*. at 946–47; *see also Lonneker Farms, Inc. v. Klobucher*, 804 F.2d 1096, 1097 (9th Cir. 1986) (holding that "a trustee in bankruptcy . . . is entitled to derived judicial immunity because he is performing an integral part of the judicial process"). For similar reasons, we afforded United States Trustees quasi-judicial immunity. *Balser v. Dep't of Justice*, 327 F.3d 903, 910 (9th Cir. 2003). Absolute immunity has been extended to attorneys for performing the duties of a prosecutor, *Imbler v. Pachtman*, 424 U.S. 409, 431 (1976); *Butz v. Economou*, 438 U.S. 478, 517 (1978), but the Supreme Court has not

extended the immunity beyond the prosecutorial function. Even court-appointed defense attorneys do not enjoy immunity because despite being "officers" of the court, "attorneys [are not] in the same category as marshals, bailiffs, court clerks or judges." *Ferri v. Ackerman*, 444 U.S. 193, 202 n.19 (1979).  In *Ferri*, the Supreme Court declined to extend immunity because "the primary office performed by appointed counsel parallels the office of privately retained counsel" where an attorney owes a duty to his client, not the public.  *Id.* at 204.  This implied disinclination to grant immunity to private counsel was solidified after the Supreme Court concluded that "private actors are not entitled to the absolute immunity granted to some government officials, such as prosecutors and judges." *Kimes v. Stone*, 84 F.3d 1121, 1128 (9th Cir. 1996) (citing *Wyatt v. Cole*, 504 U.S. 158, 164–65 (1992)).

Not only does this precedent forestall extending absolute quasi-judicial immunity to Gugino, the functional approach, which requires us to look past his identity as an attorney and focus only on the function he performed, also denies Gugino immunity.  Although the function performed by Gugino had a close nexus to the judicial process—he prepared the order during a judicial proceeding, and orders are a basic and integral part of judicial proceedings—preparing the order did not involve the kind of discretionary judgment that is protected by the doctrine.

Preparing an order on behalf of a court does require the preparer to make important decisions about language and tone, but the ultimate discretion in determining whether an order will be integral to resolving a dispute lies with the judge, not the preparer.  Only the judge can exercise the unique authority vested in him by signing an order of the

court. Because the judge must approve of an order before it is filed and before it can affect the course of the judicial proceeding, it cannot be said that simply preparing an order involves the "substantial discretion" that results in absolute immunity. *See Castillo*, 297 F.3d at 951.

Gugino argues that he is entitled to absolute immunity because a law clerk would have been entitled to absolute immunity for preparing the order. Although law clerks are entitled to absolute immunity and certainly prepare orders, an attorney cannot be compared to a law clerk, who is "probably the one participant in the judicial process whose duties and responsibilities are most intimately connected with the judge's own exercise of the judicial function." *Moore v. Brewster*, 96 F.3d 1240, 1245 (9th Cir. 1996) (internal quotation marks omitted).

Gugino also contends he is entitled to absolute quasi-judicial immunity because he was doing what Judge Israel asked him to do. Other circuits have held that a function undertaken pursuant to the explicit direction of a judge entitles the subordinate to absolute immunity. *Kincaid v. Vail*, 969 F.2d 594, 600–01 (7th Cir. 1992) (citing examples from five circuits extending immunity for carrying out judicial directives). We have previously held that court clerks are entitled to absolute immunity even in the absence of a judicial directive so long as the acts were not done "in the clear absence of all jurisdiction." *Mullis v. United States Bankruptcy Court for Dist. of Nev.*, 828 F.2d 1385, 1390 (9th Cir. 1987). However, immunity was extended in all of those cases to court officials, and Gugino is not a court official. Additionally, the district court here characterized Gugino's action as one he volunteered to do. Gugino maintains that he was directed to prepare the order, and Judge Israel's minute

order stated that "the Court directed Counsel to prepare an order for a show cause hearing." Nevertheless, when we view the transcript of the hearing in a light most favorable to Burton and Koch, we resolve the inference in their favor. Gugino responded when Judge Israel asked, "who wants to prepare the order?" and, unlike the first status hearing, Gugino did not voice any concern about preparing the order in light of the bankruptcy.

Finally, Gugino argues that policy reasons support the extension of absolute immunity here. He asserts that having attorneys prepare orders preserves scarce judicial resources, and that the practice would be inhibited if attorneys were exposed to civil liability for doing so. Of course, nothing in our holding necessarily subjects an attorney to liability. We simply decline to extend the doctrine of absolute immunity. Judicial economy does not provide a justification for altering our case law. In addition, affording immunity to attorneys for drafting orders might immunize improper actions where attorneys did knowingly and wilfully violate the automatic stay by presenting orders violating the stay to judges who were not apprised of the bankruptcy filing.

IV

On the narrow question presented by this appeal, we conclude that an attorney preparing an order for a judge is not entitled to quasi-judicial immunity. We do not reach the question of whether such an action violated the automatic stay, or whether it was actionable under 11 U.S.C. § 362(k).

**AFFIRMED.**

GILMAN, Circuit Judge, dissenting:

The majority refuses to extend quasi-judicial immunity to Salvatore Gugino, a private attorney, based on the majority's conclusion that Gugino performed a nondiscretionary act in drafting a show-cause order at Judge Israel's request. In so concluding, I believe that the majority has not only misapplied the precedents on point, but has produced a very unfair result. I therefore respectfully dissent.

To begin with, the majority and I actually agree on a number of key points. We agree, for example, that immunity "is not reserved solely for judges, but extends to nonjudicial officers for all claims relating to the exercise of judicial functions." *In re Castillo*, 297 F.3d 940, 947 (9th Cir. 2002) (extending immunity to a Chapter 13 bankruptcy trustee) (internal quotation marks omitted). And we agree that immunity depends on "the nature of the function performed and not [on] the identity of the actor performing it." *Id.* at 948. Finally, we recognize that "absolute quasi-judicial immunity will be extended to nonjudicial officers only if they perform official duties that are functionally comparable to those of judges, i.e., duties that involve the exercise of discretion in resolving disputes." *Id.*

But this is where my agreement with the majority ends. The drafting of a show-cause order is not simply a mechanical action comparable to court reporters transcribing verbatim transcripts. *See Antoine v. Byers & Anderson, Inc.*, 508 U.S. 429, 436 (1993) (declining to extend immunity to court reporters because they "are afforded no discretion in . . . record[ing], as accurately as possible, what transpires in court"). Even the majority acknowledges that "the function performed by Gugino had a close nexus to the judicial

process," that "orders are a basic and integral part of judicial proceedings," and that "[p]reparing an order on behalf of a court does require the preparer to make important decisions about language and tone." Maj. Op. at 13.

Notwithstanding these acknowledgements, however, the majority concludes (without citation to any authority) that "preparing the order did not involve the kind of discretionary judgment that is protected by the doctrine [of judicial immunity]." *Id.* My problem with the majority's analysis is that it fails to recognize the fact that Gugino was in effect acting as Judge Israel's law clerk for the specific task at hand, and that this court has previously held that law clerks are entitled to quasi-judicial immunity. *See Moore v. Brewster*, 96 F.3d 1240, 1244–45 (9th Cir. 1996) (extending immunity to a law clerk for alleged due process violations related to the improper handling of a supersedeas bond).

Indeed, if we were to substitute a law clerk for Gugino and assume that Judge Israel had directed the clerk to draft the show-cause order in question, this court's decision in *Moore* would have immunized the clerk from liability because the act of drafting a show-cause order directly relates to "the independent and impartial exercise of judgment vital to the judiciary." *See Castillo*, 297 F.3d at 949. The exercise-of-discretion requirement, in other words, is derived from the judge who directs the task and should not be focused solely on the drafter of the order. *See Mullis v. Bankruptcy Court of Dist. of Nev.*, 828 F.2d 1385, 1390 (9th Cir. 1987) (explaining that immunity extends "from the judge who appoint[s]" the person in question).

This point is crucial because Gugino's identity as a private attorney should not preclude the extension of

immunity. *See Castillo*, 297 F.3d at 948 (cautioning against concentrating on the identity of the actor in immunity cases). The majority to its credit agrees that we are required "to look past his identity as an attorney and focus only on the function he performed." Maj. Op. at 13. But then the majority goes astray by not recognizing that Gugino was in fact functioning as a law clerk in carrying out Judge Israel's directive to draft the show-cause order that is the sole focus of this lawsuit. And, as previously noted, a law clerk performing this task would be entitled to quasi-judicial immunity. *See Moore*, 96 F.2d at 1244–45. So should Gugino.

Unfortunately, the majority elevates a hypothetical policy concern to a rationale for declining to extend immunity on the facts before us. As the majority reasons, extending immunity in this case "might immunize improper actions where attorneys did knowingly and willfully violate the automatic stay by presenting orders violating the stay to judges who were not apprised of the bankruptcy filing." Maj. Op. at 15. But those circumstances are clearly not present here. Gugino simply obeyed a judicial directive from a state judge who was fully apprised of the bankruptcy filing. His actions were therefore neither self-initiated nor taken with the intent to bamboozle an uninformed judge.

And this leads to my next point. The majority credits the district court's isolated and inconsistent characterization of Gugino's conduct as "volunteer[ing]" to prepare the show-cause order. *Id.* at 10. But this is not a fair inference from the record. At the hearing, Judge Israel explicitly stated: "I'm going to issue an order to show cause," and he then explained the order's specifics. Judge Israel followed this explanation by asking "who wants to prepare the order?" He then

prompted a response by inquiring: "Mr. Gugino?" Gugino responded: "I'll prepare it, Your Honor."

As is evident from this exchange, Gugino agreed to draft the show-cause order *after* Judge Israel requested one of the attorneys, and particularly Gugino, to do so. Thus, to say that Gugino "volunteered," without more, mischaracterizes the record. All of the other record citations, in fact, support a contrary conclusion, starting with Gugino's statement in his June 9, 2011 letter to Koch that "Judge Israel ordered that an Order to Show Cause be issued against you, and he then directed me to prepare the Order. This was not my idea, nor did I recommend it to the Court." Judge Israel's own minute entry confirms that the "Court directed Counsel to prepare an order for a show cause hearing and Court set hearing."

Even the district court twice found that Judge Israel directed Gugino to draft the order. *See* Dist. Ct. Order at 3 ("Judge Israel ordered Gugino to draft an order to show cause to be served on Koch.") and *id.* at 14–15 ("Judge Israel acted in excess of his jurisdiction when he . . . directed Gugino to draft an order to show cause against Koch for failing to interplead the settlement funds.")

In light of this overwhelming record evidence, the district court's single inconsistent statement on page 12 of its Order that "Gugino is not entitled to quasi-judicial immunity because Gugino volunteered to prepare the order in direct violation of the stay" is entitled to little weight. This is especially so because the key point is the undisputed fact that the show-cause order was initiated and directed by Judge Israel, not by Gugino, whether or not the latter "volunteered."

Moreover, the majority's decision not to extend quasi-judicial immunity to an officer of the court acting at the behest of a judge is in conflict with every other federal appellate court that has confronted the issue. *See, e.g.*, *Kincaid v. Vail*, 969 F.2d 594, 601 (7th Cir. 1992) (noting the "general agreement that court officials . . . who act at the behest of a judge or pursuant to a court order are entitled to absolute quasi-judicial immunity from suit as to those actions") (quoting *Forte v. Sullivan*, 935 F.2d 1, 3 (1st Cir. 1991)); *Rogers v. Bruntrager*, 841 F.2d 853, 856 (8th Cir. 1988) (explaining that clerks of court "have absolute immunity from actions for damages arising from acts they are specifically required to do under court order or at a judge's direction.") (internal quotation marks omitted).

The reasoning underlying these cases is directly applicable to this case; i.e., the fundamental unfairness of holding liable those who carry out the orders of judges when the judges themselves are absolutely immune. *See Green v. Maraio*, 722 F.2d 1013, 1019 (2d Cir. 1983) ("[I]t would be manifestly unfair to allow Maraio to be subjected to liability when she was acting within the scope of the judge's instructions and was simply acting as an arm of the court in compliance with the exercise of his judicial authority.") (emphasis omitted). Similarly, declining to extend immunity to Gugino is fundamentally unfair when Judge Israel himself enjoys immunity.

Finally, I cannot help but note that this entire dispute could have been avoided if the attorneys involved had exhibited greater collegiality and common sense. But their communications in fact broke down, and this case resulted. Now these events have produced a majority opinion that unfortunately puts at risk the common practice of private

attorneys drafting proposed orders on behalf of a judge.  For all of the above reasons, I would reverse the judgment of the district court and grant Gugino quasi-judicial immunity for his actions in this case.