FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| CITIMORTGAGE, INC., *Plaintiff-Counter-Defendant-Appellant*, | No. 17-16404 |
| | D.C. No. 2:16-cv-00398-JCM-GWF |
| v. | |
| CORTE MADERA HOMEOWNERS ASSOCIATION; SUSAN PATCHEN; EAGLE AND THE CROSS, LLC; NEVADA ASSOCIATION SERVICES, INC., *Defendants-Counter-Claimants-Appellees.* | OPINION |

Appeal from the United States District Court
for the District of Nevada
James C. Mahan, District Judge, Presiding

Argued and Submitted November 13, 2019
Submission Vacated January 21, 2020
Resubmitted June 12, 2020
Pasadena, California

Filed June 19, 2020

Before: Susan P. Graber, Marsha S. Berzon,
and Morgan Christen, Circuit Judges.

Opinion by Judge Christen

## SUMMARY[*]

### Nevada Foreclosure Law

The panel affirmed in part, and reversed in part, the district court's judgment in an action brought by CitiMortgage, Inc. ("Citi") against a Nevada homeowners association ("HOA") for wrongful foreclosure, breach of the statutory duty of good faith required by Nev. Rev. Stat. 116.1113, and quiet title.

Nev. Rev. Stat. § 116.3116(1) allows HOAs to pursue liens on members' homes for unpaid assessments and charges. HOA liens are split into superpriority and subpriority components. The superpriority component is prior to all other liens, including first deeds of trust; and it comprises nine months' worth of common assessments and any nuisance-abatement or maintenance charges. An HOA may foreclose on its superpriority lien through a non-judicial foreclosure sale.

Citi argued that the HOA's non-judicial foreclosure sale did not extinguish its interest because Citi's predecessor, Bank of America, N.A. ("BANA"), tendered the superpriority portion of the lien to the HOA. The panel rejected Citi's request to remand the appeal to the district court in light of intervening case law in *7510 Perla Del Mar Ave Tr. v. Bank of America, N.A.,* 458 P.3d 348, 350-51 (Nev. 2020) (en banc) (holding that a mere offer to pay at a later time, after the superpriority amount was determined, does not constitute a

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

valid tender), because *Perla Del Mar* did not alter the validity of Citi's tender where in this case BANA insisted on the same condition that *Perla Del Mar* prohibited. The panel held that the district court did not err when it concluded that Citi was obligated to satisfy the superpriority portion of the lien in order to protect its interest. The panel further held that the district court did not err by observing that Citi's offer to pay nine months' assessments was not the equivalent of an offer to pay the superpriority of the HOA's lien; and in light of *Perla Del Mar*, the district court did not err by ruling that Citi's tender was impermissibly conditional. The panel declined to consider Citi's unpreserved futility-of-tender argument, raised for the first time on appeal, or to remand for further factual development.

Citi's complaint alleged that the HOA foreclosure sale violated the automatic bankruptcy stay that arose pursuant to 11 U.S.C. § 362(a) when the homeowner filed her bankruptcy petition. The panel remanded for the district court to consider whether the property was property of the debtor or of the bankruptcy estate, to determine whether the notices violated the bankruptcy stay, and to address whether Citi has standing to challenge the alleged violation.

In a separately filed memorandum disposition, the panel affirmed the district court's denial of Citi's due process challenge and the denial of Citi's argument that the sale should be aside due to an inadequate sale price.

**COUNSEL**

Darren T. Brenner (argued), Ariel E. Stern, Scott R. Lachman, and Thera Cooper, Akerman LLP, Las Vegas, Nevada, for Plaintiff-Counter-Defendant-Appellant.

Michael N. Beede and James W. Fox, The Law Office of Mike Beede PLLC, Henderson, Nevada, for Defendants-Counter-Claimants-Appellees.

**OPINION**

CHRISTEN, Circuit Judge:

In 2014, Corte Madera Homeowners Association conducted a non-judicial foreclosure sale in Las Vegas, Nevada to enforce a lien representing delinquent amounts owed by one of its homeowner members, Kathy Horton. CitiMortgage's ("Citi") first deed of trust on the property was extinguished in the foreclosure by operation of section 116.3116 of the Nevada Revised Statutes, which gave superpriority status to a portion of Corte Madera's lien.

Citi sued Corte Madera for wrongful foreclosure, breach of the statutory duty of good faith required by section 116.3113 of the Nevada Revised Statutes, and quiet title.

The district court granted summary judgment in favor of defendants on all of Citi's claims, and sua sponte rejected the allegation in Citi's complaint that Corte Madera's foreclosure notices violated the automatic stay imposed in Horton's bankruptcy proceeding. Citi appeals the dismissal of its quiet title claim. We have jurisdiction pursuant to 28 U.S.C.

§ 1291. In a separately filed memorandum disposition, we affirm the district court's denial of Citi's due process challenge and the denial of Citi's argument that the sale should be set aside due to an inadequate sale price. In this opinion, we affirm the district court's ruling regarding the adequacy of the lender's tender, but we remand for reconsideration of the complaint's allegation that Corte Madera's foreclosure notices violated the homeowner's bankruptcy stay.

## BACKGROUND

Kathy Horton owned real property located at 2517 Danborough Court, Unit 106, Las Vegas, Nevada. In 2006, Horton refinanced the property with a $120,100.00 loan secured by a deed of trust. The deed of trust was reassigned to Bank of America Home Loans (later Bank of America, N.A.; hereinafter BANA) and recorded in December 2009. BANA later reassigned the deed to Citi.

Horton fell behind in the assessments she owed to Corte Madera. She filed a chapter 7 bankruptcy proceeding on February 29, 2012. On July 2, 2013, Nevada Association Services, Inc. (NAS) recorded a notice of delinquent assessment lien on behalf of Corte Madera showing that Horton owed Corte Madera $1,649.22 on its homeowners association (HOA) lien. On October 11, 2013, NAS recorded a notice of default. By then, Horton owed Corte Madera $2,955.10.

BANA responded to the notice of default in a letter to Corte Madera.[1]  The letter argued that BANA's lien generally took priority over the HOA lien, but it also conceded that the portion of the HOA lien amounting to nine months of common assessments was "arguably senior" to BANA's deed of trust pursuant to section 116.3116 of the Nevada Revised Statutes.  BANA requested that Corte Madera identify the superpriority amount of its HOA lien, with a breakdown of nine months' assessments so BANA could calculate and tender that portion of the lien.  Corte Madera acknowledged receipt of BANA's letter but responded that it required all payoff requests to be submitted through its online request form.  Corte Madera provided no information about the amount due to satisfy the superpriority portion of the HOA lien.  Neither BANA nor Citi submitted an online request to Corte Madera.

Corte Madera recorded a notice of trustee sale in April 2014, and Susan Patchen purchased the property for $11,100 at the non-judicial foreclosure sale that followed.  Patchen later executed a quitclaim of her interest to The Eagle and the Cross, LLC (Eagle).

In February 2016, Citi filed a complaint in the federal district court for the District of Nevada naming Corte Madera, NAS, Patchen, and Eagle as defendants.  The complaint alleged that defendants breached the duty of good faith imposed by section 116.3113 of the Nevada Revised Statutes,

---

[1] Even though the deed of trust had been reassigned to Citi in June 2013, BANA's counsel sent the inquiry letter to Corte Madera.  It is not clear from the record why BANA, rather than Citi, attempted to preserve Citi's interest after the deed had been reassigned to Citi, but both parties attribute BANA's actions to Citi.

and it included a claim for wrongful foreclosure against NAS and Corte Madera. Citi also sought to quiet title against all defendants. The complaint prayed for equitable relief from foreclosure and a preliminary injunction prohibiting Eagle from selling or encumbering the property and requiring that Eagle pay all taxes, insurance, and HOA dues. The defendants filed counterclaims for quiet title and injunctive relief. Eventually, the parties filed cross-motions for summary judgment.

Citi does not dispute that section 38.330(1) of the Nevada Revised Statutes required its complaint to be accompanied by a sworn statement indicating that its claims for breach of the duty of good faith and for wrongful foreclosure had been mediated, and that no such statement was filed. The district court dismissed these two claims because Citi failed to certify that it had attempted to mediate. Citi does not appeal the district court's order dismissing these claims.[2]

Turning to Citi's quiet title claim, the district court rejected Citi's due process argument because it concluded that Citi lacked standing to assert BANA's due process rights, and because Citi did not dispute receiving actual notice of the non-judicial foreclosure sale. Because the court concluded that Citi failed to offer evidence that the foreclosure sale price was unreasonable due to any fraud, unfairness, or oppression, the court also rejected Citi's argument that the sale should be set aside.

---

[2] The district court also ruled that Citi's request for injunctive relief was not cognizable as a stand-alone claim. Citi does not appeal that ruling.

In this opinion, we address Citi's tender and bankruptcy arguments in support of its quiet title claim. The district court rejected Citi's argument that BANA's letter to Corte Madera successfully tendered the superpriority portion of the lien. The court ruled that the lender's offer to pay the superpriority portion, conditioned on receipt of "adequate proof" of the amount of the lien, was not a valid tender. The district court also recognized that Citi's complaint alleged that the notice of delinquent assessment and notice of default violated the automatic bankruptcy stay that arose when Horton filed for chapter 7 protection. Neither party briefed that issue in the district court, but the district court reached it and decided that the foreclosure sale did not violate the bankruptcy stay because Horton received a discharge in May 2012, her bankruptcy case was closed in October 2013, and Corte Madera's non-judicial foreclosure sale did not occur until May 2014.[3]

Citi timely appealed the district court's order granting summary judgment to defendants on its quiet title claim.

## STANDARD OF REVIEW

We review de novo a district court's order granting summary judgment. *Fed. Home Loan Mortg. Corp. v. SFR Invs. Pool 1, LLC*, 893 F.3d 1136, 1144 (9th Cir. 2018), *cert. denied*, 139 S. Ct. 1618 (2019).

---

[3] Having ruled in defendants' favor, the district court declined to consider Citi's argument that Patchen was not a bona fide purchaser. *See Wells Fargo Bank, N.A. ex rel. Holders of HarborView Mortg. Loan Tr. Mortg. Loan Pass-Through Certificates, Series 2006-12 v. Radecki*, 426 P.3d 593, 596–97 (Nev. 2018) (en banc).

**DISCUSSION**

Section 116.3116(1) of the Nevada Revised Statutes allows homeowners associations to pursue liens on members' homes for unpaid assessments and charges.  HOA liens are split into superpriority and subpriority components; the superpriority component is prior to all other liens, including first deeds of trust, with enumerated exceptions not relevant here.  Nev. Rev. Stat. § 116.3116(2).  The superpriority portion comprises nine months' worth of common assessments and any nuisance-abatement or maintenance charges.  *Id.* § 116.3116(3); *see also Bank of Am., N.A. v. Arlington W. Twilight Homeowners Ass'n*, 920 F.3d 620, 622 (9th Cir. 2019) (per curiam); *SFR Invs. Pool 1 v. U.S. Bank, N.A.* ("*SFR Investments*"), 334 P.3d 408, 411 (Nev. 2014) (en banc), *superseded by statute on other grounds as stated in Saticoy Bay LLC Series 9050 W Warm Springs 2079 v. Nev. Ass'n Servs.*, 444 P.3d 428 (Nev. 2019).  An HOA may foreclose on its superpriority lien through a non-judicial foreclosure sale.  *See* Nev. Rev. Stat. § 116.31162; *see also Arlington W.*, 920 F.3d at 622.

To initiate a non-judicial foreclosure proceeding, an HOA must give notice of delinquency and wait 90 days to allow the homeowner to pay off the lien.  *See* Nev. Rev. Stat. § 116.31162.  Notice of default and notice of sale must be provided to the homeowner and to any holders of security interests in the property.  *Id.*  The holder of the first deed of trust may protect its collateral by tendering the amount of the superpriority portion of the lien to the HOA.  *SFR Invs.*, 334 P.3d at 411.  Before 2015, these notices were not

required to state the amount of the superpriority portion.**⁴** Interpreting the version of the statute in effect when Corte Madera sought to foreclose on Horton's property, the Nevada Supreme Court ruled that, because notices of default were required to be sent to all lienholders, it was permissible for the notice to state the total amount in default without segregating the superpriority amount. *Id.* at 418. The court reasoned that lenders holding first deeds of trust could protect their interests by either determining and tendering the exact amount of the superpriority component, or by tendering the full amount indicated in the notice and requesting a refund of the balance. *Id*.

## A. *BANA's Offer Did Not Constitute Valid Tender.*

Citi argues that Corte Madera's non-judicial foreclosure sale did not extinguish its interest because BANA tendered the superpriority portion of the lien to Corte Madera. More specifically, Citi argues that BANA's letter to Corte Madera constituted a valid tender because the letter insisted on a permissible condition: that Corte Madera present "adequate proof" of the amount due for nine months' assessments. BANA's letter recounted the relevant provisions of section 116.3116 and requested a copy of the "HOA payoff ledger detailing the super-priority amount by providing a breakdown of nine (9) months of common HOA assessments in order for us to calculate the super priority [sic] amount."

The Nevada Supreme Court has cited with approval the commonly recognized definition of tender as "an offer to

---

**⁴** In 2015, section 116.3116 of the Nevada Revised Statutes was amended to require HOAs to specify the amount of the superpriority portion of the lien in the notice of default. 2015 Nev. Stat., ch. 226.

perform a condition or obligation, coupled with the present ability of immediate performance." *7510 Perla Del Mar Ave Tr. v. Bank of Am., N.A.*, 458 P.3d 348, 350 (Nev. 2020) (en banc) (quoting *Cochran v. Griffith Energy Serv., Inc.*, 993 A.2d 153, 166 (Md. Ct. Spec. App. 2010)). *Perla Del Mar* thus endorsed "the generally accepted rule that a promise to make a payment at a later date or once a certain condition has been satisfied cannot constitute a valid tender." *Id.* Valid tender of the superpriority portion discharges an HOA lien, *Arlington W.*, 920 F.3d at 622, but the tender either must be unconditional or include only those "conditions on which the tendering party has a right to insist," such as a request for satisfaction of judgment or a statement that the acceptance of tender satisfies the superpriority portion of the lien, *Bank of Am., N.A. v. SFR Invs. Pool 1, LLC*, 427 P.3d 113, 117–18 (Nev. 2018) (en banc).

In *Perla Del Mar*, counsel for the lender, BANA, sent an inquiry letter to the HOA's agent, NAS, substantively identical to the one BANA sent in this case. 458 P.3d at 349. Upon receipt of the notice of default, BANA's counsel informed NAS that it would pay the superpriority portion of the lien after receiving proof of the amount. *Id.* Just as in this case, NAS did not specify the superpriority amount and proceeded with its non-judicial foreclosure sale. *Id.* At a subsequent bench trial on the purchaser's quiet title claim, the trial court heard testimony that NAS's policy was to reject any payment for less than the full amount of the lien. *Id.* at 349–50.

*Perla Del Mar* held that a mere offer to pay at a later time, after the superpriority amount is determined, does not constitute a valid tender. *Id.* at 350–51. It also held that formal tender is excused when it is known that the party

entitled to payment will reject it. *Id.* at 351. Citi argues that the district court did not have the benefit of *Perla Del Mar* when it dismissed Citi's quiet title claim, and it urges us to remand its appeal to the district court in light of this intervening case law. We decline to do so.

*Perla Del Mar* does not alter the validity of Citi's tender. BANA's letter extended an offer to pay the superpriority amount of Corte Madera's lien, "whatever it is," when BANA received adequate proof of the amount. Corte Madera replied that all payoff requests must be made exclusively through an online request system, but BANA failed to submit such a request. Citi's reliance on *Perla Del Mar* is unavailing because, in this case, BANA insisted on the same condition that *Perla Del Mar* prohibited.

Citi argues on appeal that its tender was sufficient because its offer to pay the superpriority portion could not have been more definite given the information available. Citi contends that the district court erred by relying on section 116.31162(1)(b) of the Nevada Revised Statutes to decide that Corte Madera's notice of default was adequate. At the time, section 116.31162(1)(b) identified the information the HOA was required to include in its notice of default, and the statute permitted the notice to include only the total amount due to the HOA. Citi contends that, directed to homeowners, the statutorily required notice made sense because homeowners must satisfy the entire debt. But Citi argues that it had no way to calculate the superpriority amount of Corte Madera's lien, and that no Nevada precedent required it to satisfy junior liens in order to protect its interest.

Citi's argument fails because it overlooks the Nevada Supreme Court's ruling that the operative version of section

116.3116 allowed lenders to satisfy the superpriority portion of an HOA lien by paying the entire amount in the notice of default and seeking reimbursement. *SFR Invs.*, 334 P.3d at 418. Citi also overlooks the plain text of section 116.3116(3), which specifies that the superpriority portion comprises nine months' worth of assessments and any nuisance-abatement and maintenance charges. The district court did not err when it concluded that Citi was obligated to satisfy the superpriority portion of the lien in order to protect its interest. *See* Nev. Rev. Stat. § 116.3116(2).

Citi argues that its tender was sufficient on the facts of this case because it did not owe nuisance-abatement and maintenance charges. But Citi misapprehends the district court's ruling. In BANA's letter to Corte Madera and in Citi's summary judgment briefing, the lenders asserted that the superpriority portion was limited to nine months' worth of common assessments. In fact, in its summary judgment briefing, Citi insisted that it owed only nine months' worth of common assessments and "not one penny more." It was in response to Citi's assertion that the superpriority portion was limited to nine months' worth of assessments that the district court observed, per section 116.3116(3), that the superpriority portion includes nine months' worth of assessments *and* any unpaid maintenance and nuisance-abatement charges. Though Citi persists in arguing that no nuisance-abatement or maintenance charges were owed in this case, it fails to offer any persuasive response to the district court's ruling that Citi's tender was impermissibly conditional. The outcome of this issue is thus dictated by Nevada's common-law requirement for tender. The district court did not err by observing that Citi's offer to pay nine months' assessments was not the equivalent of an offer to pay the superpriority portion of Corte Madera's lien. And in light of *Perla Del*

*Mar*, the district court did not err by ruling that Citi's tender was impermissibly conditional.

Citi alternatively argues that its obligation to tender should be excused because NAS had a known policy of rejecting any payment for less than the full lien amount. Citi first suggested that its obligation to tender should be excused on the basis of futility in response to this court's clerk order inquiring whether this appeal should be remanded in light of the decision in *Arlington West*, 920 F.3d 620. *Arlington West* considered whether section 116.3116 of the Nevada Revised Statutes affords constitutionally adequate notice to lienholders. 920 F.3d at 623–24. Rather than revisiting the due process argument, Citi urged us to remand in light of *Bank of America, N.A. v. Thomas Jessup, LLC Series VII*, 435 P.3d 1217 (Nev. 2019) (per curiam) ("*Jessup I*"), *vacated on reconsideration en banc*, 2020 WL 2306320 (Nev. May 7, 2020) (unpublished) ("*Jessup II*"), because Citi read that case as acknowledging a general rule that formal tender is excused if it would have been rejected.

*Jessup II* did not ultimately address the futility-of-tender issue,[5] but the published opinion in *Perla Del Mar* did. In addition to reiterating the standard for adequate tender, *Perla Del Mar* held that tender may be excused as futile if it would have been rejected. 458 P.3d at 351. Citi now urges us to remand so the district court may reconsider its summary judgment ruling with the benefit of *Perla Del Mar*. But Citi

---

[5] The en banc Nevada Supreme Court issued an unpublished order that reiterated *Jessup I*'s requirements for tender but included no substantive ruling on futility because the record in that case did not establish that tender would have been rejected. *See Jessup II*, 2020 WL 2306320, at *1.

did not preserve the futility argument it now advances. At oral argument before our court, Citi conceded that it did not introduce evidence in the district court that would support a finding of futility. Though Citi argues that it would have pursued a futility-of-tender argument in the district court if it had had the benefit of the recent Nevada case law addressing futility, the futility-of-tender concept discussed in *Perla Del Mar* is nothing new. The Nevada Supreme Court explained that the ruling in *Perla Del Mar* was based on "a generally accepted exception" to the rule requiring actual tender, not a fundamental change in Nevada law. 458 P.3d at 351 (collecting cases). And we note that Appellees cited the well-established futility rule in their answering brief in this appeal. ("The burden of proving tender and *unjustified refusal* rests with the asserting party." (emphasis added) (citing 74 Am. Jur. 2d Tender § 47)). Yet Citi's reply brief continued to argue only that its tender was valid.

The district court did not err when it ruled that BANA's inquiry letter was impermissibly conditional, and Citi did not preserve its argument that its tender was excused. We decline to consider Citi's unpreserved futility-of-tender argument, raised for the first time on appeal, *Smith v. Hughes Aircraft Co.*, 22 F.3d 1432, 1438 (9th Cir. 1993), or to remand for further factual development.

## B. *Violation of the Automatic Bankruptcy Stay*

Citi's complaint included the allegation that Corte Madera's foreclosure sale violated the automatic bankruptcy stay. Specifically, the complaint alleged that the sale was void and must be set aside because the notice of delinquent assessment lien, recorded on July 2, 2013, and the notice of default, recorded on October 11, 2013, were actions taken in

violation of the automatic bankruptcy stay that arose pursuant to 11 U.S.C. § 362(a) when Horton filed her bankruptcy petition. Acts that violate the automatic stay include "any act to create, perfect, or enforce any lien against property of the estate." § 362(a)(4). Citi's complaint alleges that the Danborough Court property became property of the estate on the day Horton filed her chapter 7 petition, February 29, 2012, but the complaint also suggests the notices may have constituted acts to "create, perfect, or enforce" a lien against property of the *debtor* pursuant to § 362(a)(5). The complaint does not specify which provision—§ 362(a)(4) or § 362(a)(5)—the notices allegedly violated.

Citi did not raise an issue regarding the bankruptcy stay in its summary judgment briefing, but the district court's order granting summary judgment included a sua sponte ruling that the foreclosure sale did not violate the stay. The court relied on the date of the foreclosure sale to conclude that the complaint's contention failed, reasoning that, "[a]ccording to the complaint, the foreclosure sale did not take place until May 16, 2014—after the borrowers received a discharge in bankruptcy [on] May 30, 2012 and after the bankruptcy case was closed [on] October 17, 2013." Relying on the complaint's recitation of this sequence of events, the district court concluded "the foreclosure sale will not be set aside as it did not violate the automatic bankruptcy stay under 11 U.S.C. § 362(a)." On appeal, Citi reiterates the complaint's allegation that the notices themselves violated the automatic stay, that the notices must be deemed void as a result, and that the subsequent foreclosure sale must be set aside for lack of adequate notice. *See Schwartz v. United States (In re Schwartz)*, 954 F.2d 569, 571 (9th Cir. 1992) ("[V]iolations of the automatic stay are void, not voidable.").

The filing of a bankruptcy petition automatically stays "actions by all entities to collect or recover on claims" against the debtor and the property of the estate. *Burton v. Infinity Capital Mgmt.*, 862 F.3d 740, 746 (9th Cir. 2017). The stay is "effective against the world, regardless of notice." *Morris v. Peralta (In re Peralta)*, 317 B.R. 381, 389 (B.A.P. 9th Cir. 2004). We have said that "[g]enerally, the filing of bankruptcy will stay all proceedings relating to a foreclosure sale." *Mann v. Alexander Dawson, Inc. (In re Mann)*, 907 F.2d 923, 926–27 (9th Cir. 1990).

Our court has not had occasion to decide whether notices filed pursuant to Nevada's non-judicial foreclosure statute constitute acts to create, perfect, or enforce liens for purposes of § 362(a). But we have held that acts that "immediately or potentially threaten the debtor's possession of its property" violate the stay, *Morgan Guar. Tr. Co. of N.Y. v. Am. Sav. & Loan Ass'n*, 804 F.2d 1487, 1491 (9th Cir. 1986), and at least one bankruptcy court has recognized that the stay bars recording notices of default or delinquent assessments "that would lead to foreclosure of property of the debtor's estate," *In re Capital Mortg. & Loan, Inc.*, 35 B.R. 967, 971 (Bankr. E.D. Cal. 1983).

The district court misperceived the contention in Citi's complaint and mistakenly focused on the foreclosure sale rather than on the notices of delinquent assessment and default. But we cannot agree with Citi that it is necessarily entitled to prevail on this claim. With some exceptions inapplicable here, § 362(a)(4) stays remain in effect "until such property is no longer property of the estate," § 362(c)(1); *see also Bigelow v. Comm'r*, 65 F.3d 127, 129 (9th Cir. 1995) (per curiam); 3 Collier on Bankruptcy ¶ 362.06. Citi's complaint alleged that the Danborough Court

property remained property of the bankruptcy estate until the Trustee abandoned it on October 17, 2013.  But the complaint, and Citi's brief on appeal, both suggest that Citi contends the Danborough Court property was *either* property of the estate or property of the debtor.  If the Danborough Court property was property of the debtor, the stay lifted on the earliest of the case closure, case dismissal, or bankruptcy discharge. *See* § 362(c)(2).  Of those three dates, the earliest was the bankruptcy discharge on May 30, 2012, *before* Corte Madera filed any of its foreclosure-related notices.  Under this scenario, the notices would not have violated the stay.

We therefore remand for the district court to consider whether the property was property of the debtor or of the estate, to determine whether the notices violated the bankruptcy stay, and to address whether Citi has standing to challenge the alleged violation.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**  The parties shall bear their own costs on appeal.